ROBERT OLSEN, Plaintiff-Appellant, *v.* DR. AGNES KARWOSKI, a/k/a Agnes L. Olsen, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-749

Opinion filed January 24, 1979.—Rehearing denied February 15, 1979.

Joshua Sachs, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Maurice J. Garvey and Kay L. Schichtel, of counsel), for appellee Dr. Agnes Karwoski.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini and Stephen D. Marcus, of counsel), for appellee Dr. Theodore Dulin.

Lord, Bissell & Brook, of Chicago (Williams P. Dorr, Hugh C. Griffin, and Cynthia Giacchetti, of counsel), for appellee Dr. Yang Cog Chun.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This is an action for damages plaintiff Robert Olsen claimed he suffered when he was twice involuntarily admitted to mental hospitals for emergency hospitalization. The circuit court judge granted summary judgment in favor of Dr. Theodore Dulin and Dr. Yang Cog Chun, defendants in this action, and also dismissed all charges against the plaintiff's former wife, defendant Dr. Agnes Karwoski. The plaintiff appeals from those orders.

In October 1974, the plaintiff was twice involuntarily admitted to mental hospitals for emergency hospitalization. The first admission took place on the evening of October 11, 1974, when he was brought to Mt. Sinai Hospital (Mt. Sinai) in Chicago by the Darien police. This admission was pursuant to the Illinois Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 7—1), which authorizes emergency hospitalization for any person who "is or is asserted to be * * * in need of mental treatment and in such a condition that immediate hospitalization is necessary for the protection * * * of such person or others * * *." To establish that this condition exists, the Mental Health Code requires both a petition stating the reasons for the admission and an accompanying certificate of a physician setting forth the reasons why the person allegedly in need of mental treatment should be hospitalized. The physician's certificate is to

be based on his personal examination of the person within 72 hours prior to the admission.

Dr. Karwoski, who at the time was the plaintiff's wife, signed the petition. The medical certificate was signed by Dr. Dulin at Dr. Karwoski's request. In this certificate, dated October 11, 1974, Dr. Dulin attested that he had personally examined the plaintiff within the prior 72 hours. The plaintiff disputes Dr. Dulin's statement, claiming that Dr. Dulin had not examined him on October 11, 1974, at any time thereafter, or for several years prior to that date. Dr. Dulin has not denied the plaintiff's assertion.

Shortly after being admitted to Mt. Sinai, the plaintiff was examined by Dr. Chun, a staff psychiatrist, who diagnosed the plaintiff's condition as suicidal and homicidal. Dr. Chun certified that the plaintiff was in need of mental treatment, but despite Dr. Chun's findings and certificate, the plaintiff was released later the same evening. Nothing in the record explains why the plaintiff was released within such a short time after his admission to Mt. Sinai Hospital.

Four days later, on the evening of October 15, 1974, the plaintiff was again admitted for emergency hospitalization, this time at Tinley Park Mental Health Center (Tinley Park), where he was brought by Chicago police. The plaintiff alleges that he was not examined by any physician within the 72 hours preceding his admission to Tinley Park, as required by paragraph 7—1 of the Mental Health Code. The plaintiff further charges that the certificates signed by Dr. Dulin and Dr. Chun on October 11 were altered by either or both of them, or by someone acting at their direction, to make the certificates appear to have been prepared on October 14, within 72 hours of the plaintiff's admission to Tinley Park. The plaintiff was released from Tinley Park shortly after his admission to that hospital. Again, the record does not explain why.

The complaint alleges (i) that the three defendants conspired to have him hospitalized through abuse of process and falsely arrested and imprisoned, and to maliciously prosecute him; (ii) that Dr. Chun caused him to be falsely arrested and imprisoned, and caused his hospitalization at Tinley Park through abuse of process; (iii) that Dr. Karwoski and Dr. Dulin caused the plaintiff to be falsely arrested and imprisoned, maliciously prosecuted him, and also caused him to be hospitalized at Mt. Sinai and also at Tinley Park through abuse of process.

We first address the question of whether Dr. Karwoski's motion to dismiss her from the proceeding was properly allowed. After the plaintiff instituted this proceeding, she and the plaintiff were divorced. The divorce judgment entered by agreement of the parties specifically referred to this action in the following provision:

"E. That the Plaintiff shall dismiss the Defendant with prejudice from his personal lawsuit in the case of Robert Olsen vs. Agnes L. Karwoski a/k/a Agnes L. Olsen, Dr. Theodore Dulin and Dr. Yang Kog Chun [*sic*], Case No. 75 L. 21082."

Plaintiff contends that the circuit court judge who presided in this case improperly dismissed the plaintiff's action against Dr. Karwoski because that judge lacked jurisdiction to enforce this provision of the divorce judgment. The plaintiff's theory is that the provisions of a divorce judgment cannot be enforced by a circuit court judge sitting in the law division of the court.

■■■ Circuit courts are tribunals of general jurisdiction where all judges are invested with equal authority regardless of which division of the court they may be assigned to at a particular time. Thus, a law division judge in the circuit court of Cook County can enforce a judgment or order entered by a judge sitting in another division. (See Ill. Const. 1970, art. VI, §9; Fins, *Illinois Courts Derive Their Jurisdiction From The Constitution And Their Authority Is No Longer Dependent Upon Statutes or Pleadings*, Ill. State B. Ass'n Judicial Ad. Newsletter No. 1 (1977).) This court recently pointed out in *Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 373 N.E.2d 1007, that the judge of a circuit court organized in divisions has equal authority with that of every other judge of the court:

> "As divisions of the same constitutional court of general jurisdiction, each division of the circuit court has equal and concurrent subject matter jurisdiction * * *. Section 9 of the Judicial Article of 1964 and 1970 provides: 'Circuit Courts shall have original jurisdiction of *all* justiciable matters * * *.' " (Emphasis added.) (57 Ill. App. 3d 776, 778.)

Therefore, the trial judge assigned to the law division was authorized to enforce, and properly applied, the provision in the divorce judgment relating to this action.

The plaintiff also argues that the application of the divorce judgment to this case should be postponed until Dr. Karwoski has complied with her obligations under that judgment. The plaintiff, however, has failed to set forth any breaches by Dr. Karwoski of her obligations and responsibilities. Moreover, the divorce judgment does not condition the plaintiff's dismissal of this case upon compliance by his former wife with any other part of the judgment. Thus, the circuit court judge did not err in dismissing the action against Dr. Karwoski.

Dr. Dulin's motion for summary judgment was supported by his own affidavit. He stated in his motion and affidavit that he is a practicing psychiatrist, and had treated the plaintiff for brief periods in 1961 and 1962, in 1964 and in 1970 and 1971. At the request of Dr. Karwoski, he also observed the plaintiff in social settings. He learned that the plaintiff had

broken into his wife's home in September 1974, and Dr. Karwoski at the time told him she feared her husband would physically harm her. The plaintiff's actions, as described to him by others, indicated the plaintiff could well be undergoing a psychotic breakdown. He was apprehensive that the plaintiff could inflict bodily harm on his wife or himself and that the plaintiff represented a paranoid personality with incipient psychosis. He agreed to sign a certificate so that the plaintiff could be apprehended and brought to a hospital for evaluation. The plaintiff filed a counter-affidavit denying that he ever had a physician-patient relationship with Dr. Dulin, denying that he broke into his wife's home, and denying that Dr. Dulin saw him, spoke to him or examined him on the date Dr. Dulin signed his certificate or shortly prior thereto. Although Dr. Chun did not file a written motion for summary judgment or affidavits, the order granting summary judgment in favor of both doctors stated that Dr. Chun had orally joined in Dr. Dulin's motion.

The determination of the propriety of these summary judgments requires reference to accepted principles of law applicable to that type of judgment. Disposition of an action by summary judgment is proper only where the pleadings, depositions, admissions and affidavits on file establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 141, 355 N.E.2d 1; *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) The right of the movant to summary judgment must be free from doubt, and any evidence in support of the motion must be strictly construed against the moving party. (*Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 986, 360 N.E.2d 440.) Summary judgment should be granted with caution so as not to preempt a litigant from presenting the factual basis of his case to the factfinder. *Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 949, 335 N.E.2d 74.

■■ It is also helpful to emphasize here that "[e]mergency admission to a mental hospital is an extreme step and it should not be invoked except in true emergencies." (*People v. Ralls* (1974), 23 Ill. App. 3d 96, 98, 318 N.E.2d 703.) Because of the serious effects such an admission can have on a person's reputation, business and life, the legislature has provided safeguards in section 7—1 of the Mental Health Code against careless or improperly motivated proceedings committing a person for mental treatment. Among these safeguards is the requirement that a physician certify that he has examined the patient within the previous 72 hours and list the specific reasons for his conclusion that the patient requires hospitalization.

The plaintiff alleges that in neither of his two emergency admissions

was this statutory safeguard observed. This, he contends, not only supports his charges against Dr. Dulin and Dr. Chun, but raises material issues of fact that must be resolved at trial. We agree that the circumstances surrounding the emergency admissions reveal the existence of material issues of fact, but only as to the charges of malicious prosecution against Dr. Dulin and conspiracy to maliciously prosecute against Dr. Dulin and Dr. Chun.

Dr. Dulin maintains that the plaintiff's pleadings lack several elements necessary to support the claim that he was the victim of malicious prosecution. The supreme court in *Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 376 N.E.2d 991, held that a complaint charging malicious prosecution must contain facts which show: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. [Citations.]" 71 Ill. 2d 470, 475.

Dr. Dulin argues that a proceeding for emergency admission under section 7—1 of the Mental Health Code is not a judicial proceeding. However, when this section is read in conjunction with other provisions of the code, it is evident that the procedures set forth in section 7—1 are acts which initiate the judicial process required to commit a person for mental treatment. Section 7—6, for example, requires that within 24 hours of an emergency admission, the superintendent of the admitting hospital file the physician's certificate and the petition with the circuit court. The court must then set the case for hearing within 5 days. The petition and certificate for emergency admission are, therefore, the initial steps which set in motion the judicial process for commitment and their presentation to the superintendent of a hospital is part of that judicial process.

Dr. Dulin next argues that there is no showing that he acted without probable cause. In response, plaintiff asserts that the absence of probable cause for Dr. Dulin's conduct is evidenced by the medical certificate which falsely stated that Dr. Dulin had examined the plaintiff within 72 hours prior to the admission. Instead of denying this charge, Dr. Dulin claims that his past familarity with the plaintiff's behavior, coupled with information obtained from others, satisfied the need for probable cause. In support of this position, Dr. Dulin relies on the decision in *Pate v. Stevens* (Tex. Civ. App. 1953), 257 S.W.2d 763. That case affirmed summary judgment in favor of two defendant physicians charged with conspiracy, false imprisonment and malicious prosecution as a result of a commitment for mental treatment. As in the case before us, the plaintiff in *Pate* claimed that the doctors had certified that she needed mental

treatment without having examined her within the period required by Texas law. The Texas court held that the defendants' failure to comply with the statutory requirement was not an adequate ground for finding no probable cause.

The decision in *Pate* to admit the plaintiff to a mental hospital was made by a court only after reviewing the medical statements and questioning other witnesses—including the appellant's own physician-son. Unlike the present case, the plaintiff was never admitted to a hospital solely upon the presentation of the certificate of a physician. The primary purpose of the physician's statements in *Pate* was to assist the court in making its decision. See *Pate*, at 768.

■■ This contrasts with the procedure in Illinois for emergency admission, where a physician's medical certificate does not receive the attention of a judge until after the patient already has been admitted to the hospital. Thus, the decision in *Pate* is not a useful precedent in this case. Dr. Dulin's certification that he had examined the plaintiff, when this does not appear to be the case, raises an issue of fact with regard to probable cause which cannot be disposed of by way of summary judgment.

Dr. Dulin's last argument, that the plaintiff failed to plead malice, also lacks merit. In addition to Dr. Dulin's failure to comply with the emergency admission procedure, the plaintiff alleges that Dr. Dulin had knowledge of or took an active role in changing the date of the October 11 certificate to read October 14. The plaintiff claims this resulted in his subsequent emergency admission to Tinley Park. These allegations, which are denied by Dr. Dulin, raise an issue of fact which could serve as a basis for finding that Dr. Dulin's acts were malicious.

Both Dr. Dulin and Dr. Chun argue that allegations of civil conspiracy cannot create an independent cause of action, but must be linked to an underlying unlawful act. This is a correct statement of the law, for in Illinois a civil conspiracy is actionable only where wrongful acts are done in furtherance of the conspiracy. (*Barrett v. Baylor* (7th Cir. 1972), 457 F.2d 119; *Ammons v. Jet Credit Sales, Inc.* (1962), 34 Ill. App. 2d 456, 464, 181 N.E.2d 601.) Dr. Dulin's conduct, which serves as the basis for the charge that he engaged in malicious prosecution, supplies the unlawful acts which are sufficient, if proved, to support a charge to engage in malicious prosecution with other named persons. Dr. Dulin is, therefore, properly charged with engaging in a conspiracy to maliciously prosecute the plaintiff. Although the complaint does not charge Dr. Chun with malicious prosecution, it does allege that he conspired with Dr. Dulin—a conspiracy which was furthered by the unlawful acts of Dr. Dulin. The charge of conspiracy serves the purpose of associating Dr. Chun and Dr. Karwoski with the wrongful acts done, and the declarations

made, by Dr. Dulin in pursuance of the conspiracy. *Lasher v. Littell* (1903), 202 Ill. 551, 555, 67 N.E. 372; *Ammons*, at 476; *Kovar v. Bremer* (1935), 281 Ill. App. 505, 508.

Another issue of fact raised by the record is whether Dr. Chun was involved in the alleged falsification of the October 11 medical certificate. If he was, this could also support the charge of conspiracy to maliciously prosecute the plaintiff. Because Dr. Chun did not file any affidavits, the circuit court granted summary judgment in favor of Dr. Chun based only upon his answer to the amended complaint. His answer went no further than to deny under oath the various allegations of the complaint, and consequently raised issues of fact without giving the circuit court any basis for resolving them. In this posture of the case, summary judgment in favor of Dr. Chun was inappropriate.

Plaintiff also contends that he was illegally restrained against his will and liberty on each occasion he was admitted to a hospital, and that each admission was a false arrest and imprisonment. In addition, he argues that each hospitalization was accomplished through an abuse of process. Dr. Dulin and Dr. Chun argue that summary judgment on the counts charging false arrest and imprisonment and abuse of process was proper because the facts alleged in the complaint as well as those supplied by the plaintiff's affidavit failed to supply the essential elements of either of these charges.

■■ The limitation upon the plaintiff's freedom of movement were the result of legal processes and thus not grounds for an action charging false imprisonment or arrest. In *Jacobson v. Rolley* (1975), 29 Ill. App. 3d 265, 267, 330 N.E.2d 256, this court held that "[i]mprisonment under legal process will not support a claim of false imprisonment." This principle was later expanded in *Kay v. Boehm* (1975), 32 Ill. App. 3d 853, 856, 336 N.E.2d 781, where the court reasoned that "[s]ince [the] plaintiff was restrained of his liberty under legal process, through the authorized actions of the sheriff of Cook County * * *, it is apparent that a cause of action for false imprisonment will not lie against the defendants therefor." The emergency admissions of which the plaintiff complains were the result of two legal police arrests. As a matter of law, the facts presented did not support a charge of false arrest and imprisonment; summary judgment with respect to the counts alleging false arrest and imprisonment was proper.

■ Similarly, the facts alleged by the plaintiff and presented in his affidavit do not raise any issue of fact with respect to his claim of abuse of process. An action for abuse of legal process requires evidence that process has been misused or misapplied to accomplish some objective other than the legitimate scope of the process. (*Ammons*; See also Prosser, Torts §121, at 856-57 (4th Ed. 1971).) Absent evidence of misuse, the

"mere institution of a suit or proceeding, even with a malicious intent or motive does not itself constitute an abuse of process." *Holiday Magic, Inc. v. Scott* (1972), 4 Ill. App. 3d 962, 967, 282 N.E.2d 452.

Therefore, because Dr. Dulin and Dr. Chun supplied affidavits of the type described in the Mental Health Code for emergency admissions, they did not misuse process even if, in attempting to have the plaintiff admitted, they were guilty of willful and malicious conduct. The circuit court judge correctly decided that, as a matter of law, the complaint did not contain the elements required for a cause of action based upon abuse of process and properly entered summary judgment in favor of the defendants.

It follows from these conclusions that the allegations charging conspiracy to falsely arrest and imprison the plaintiff and to abuse process must also fail; as pointed out above, without an underlying unlawful act there is no substance to a charge of conspiracy. The plaintiff has not pointed to any underlying unlawful act of any defendant sufficient to establish false arrest and imprisonment or abuse of process.

In summary, the dismissal of Dr. Karwoski is affirmed. The summary judgment in favor of Dr. Dulin with respect to the allegation of malicious prosecution in count II is reversed, as is the summary judgment in favor of Dr. Dulin and Dr. Chun with respect to count IV, which alleged that they conspired to maliciously prosecute the plaintiff. We affirm the summary judgment with respect to the portions of the complaint alleging false arrest and imprisonment and abuse of process, as well as the portions of the conspiracy count (count IV) which rely on the claim of false arrest and imprisonment and abuse of process.

Affirmed in part, reversed in part, and remanded for further proceedings.

McNAMARA and McGILLICUDDY, JJ., concur.