# 58

(No. 78-CC-0739-)

DAVID BRINSON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 17, 1984.*

FRANK M. BONIFACIC, for Claimant.

NEIL F. HARTIGAN, Attorney General (HANS G. FLADUNG, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This is a claim for false imprisonment alleged to have been inflicted upon Claimant by the Tinley Park Medical Center (Center).

After a hearing before a commissioner, Claimant failed to file a brief and the matter was, by order, taken up upon the evidence and Respondent's brief only.

Claimant was arrested on the morning of April 15, 1976, at the CTA barn at Archer and Pershing, Chicago. Claimant had boarded the bus at the barn waiting for the bus to commence its run westbound in the direction of Claimant's home. While waiting in the bus, at the barn, Claimant, who had been drinking, fell asleep. He was awakened by a CTA guard who ordered him off the bus. Upon leaving the bus an altercation occurred with the CTA guard, and the Claimant was arrested by the

Chicago police upon a complaint filed by the CTA guard charging trespass and battery.

The same morning, Claimant appeared before a judge of the Circuit Court of Cook County. The examination was completed that morning as a result of which Dr. Gerson Kaplan signed a petition for hospitalization. A certificate of need for hospitalization was signed and the police thereupon transported Claimant to the Center. The petition stated that Claimant was paranoid, suicidal and dangerous to himself and to others. At the Center, the Claimant was placed on homicidal and suicidal precaution.

On the following day, April 16, 1976, at 2:30 p.m. at the Center, which day was Good Friday, Claimant was examined by a psychiatrist within the 24-hour time limit required by section 7—5 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, par. 7—5). The psychiatrist noted that "the patient shows no evidence of any reason for need of psychiatric hospitalization and should be discharged as soon as possible". Claimant was not released until the following Monday, April 19, 1976. It is for this period of confinement that Claimant seeks damages for false imprisonment.

Respondent's evidence, through their witness, Alfred Schwarz, the coordinator of forensic services for the Center, indicated that where a patient is received by way of a Circuit Court mittimus, as was the Claimant, a patient cannot be released directly by the Center but must be returned to the sheriff of Cook County. In the case of Claimant, a bond had been set on the criminal charges. The Center has no authority to accept bonds, nor is there any procedure at the Center for posting of bonds. When the patient is discharged, the sheriff's

police are notified and they pick up the patient from the hospital to return him to the House of Correction. The Center is not permitted to transport the patient between the hospital and the House of Correction.

The normal procedure is that the sheriff's police pick up the patient the day after they are called to do so, except in cases of calls made on Friday. Calls made on Friday are followed up by the sheriff's police by picking up the patient on the following Monday. The procedure is invariable and although the Center has attempted to obtain cooperation of the sheriff's office to change this situation, they have been unsuccessful in so doing.

Although Schwarz was unable to testify that, in the case of Claimant, a call to the sheriff had actually been made on Friday, April 16, 1976, he was certain that such a call must have been made on Friday, April 16, 1976, because the sheriff's police picked up Claimant on Monday, April 19, 1976.

Generally, an action for false imprisonment does not lie for a detention made by virtue of legal process duly issued by a court. *Hendricks v. State* (1949), 19 Ill. Ct. Cl. 68; *Gee v. State* (1954), 21 Ill. Ct. Cl. 573; *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 386 N.E.2d 444.

In the instant case, it is clear that Claimant was detained by reason of legal process in accordance with the statute. Thus, the initial detention cannot be the basis of any valid claim. In view of the fact that there were no further legal documents which changed Claimant's status as being lawfully detained, in the opinion of this Court the continued detention cannot be the basis of any valid claim.

Moreover, by reason of section 3—8—5(e) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38,

par. 1003—8—5(e)), a prisoner transferred to an institution of the Department of Mental Health and Developmental Disabilities is not discharged from the Department of Corrections but remains under the control of that Department.

In the case at bar, the Center, once having determined that Claimant was not in need of hospitalization, was under a duty not to discharge him unconditionally but to discharge him to the custody of the sheriff of Cook County. If the sheriff does not move quickly to obtain custody, such omission is not the responsibility of the Center. This Court finds from the evidence that the Center did notify the sheriff to pick up the Claimant on Friday, April 16, 1976, but the sheriff did not do so until April 19, 1976. The unrebutted evidence was that further telephone calls or requests to the sheriff on Saturday or Sunday would have been futile. Thus, we find that the Center did all that it was legally required to do and was not in any way negligent. Indeed, the Center would have violated its responsibilities had they unilaterally released a person who was under a criminal charge without the posting of bond and without a court order.

Therefore, it is hereby ordered that the Claimant's claim be, and hereby is, denied.