Renee H. **OVERALL**, Administratrix of the Estate of Willie Overall, Deceased, Appellant (Plaintiff Below),

v.

**STATE of Indiana, Appellee (Defendant Below).**

No. 64A03–8706–CV–154.

Court of Appeals of Indiana, Third District.

July 21, 1988.

Rehearing Denied Sept. 22, 1988.

---

Delmar P. Kuchaes, Marshall P. Whalley, Chudom & Meyer, Schererville, for appellant.

Linley E. Pearson, Atty. Gen., Thomas R. Hamill, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Renee H. Overall as administratrix of the estate of Willie Overall appeals the trial court's entry of a judgment on the evidence in favor of the State of Indiana. The estate brought a wrongful death action against the State after Willie was struck and killed by a motorist as he was attempting to walk home upon his release from a mental hospital.

The evidence relevant to this appeal discloses that Willie was an attentive father and husband and an excellent employee. In 1978 after the birth of his second child he began believing that she was a twin and that the other child had been sold. He began behaving irrationally. He approached people with children because he believed that one might be the missing twin.

A few months later Willie became violent and threatened to kill his wife on numerous occasions. Willie's work habits became so poor he was terminated. Willie's sister and brother-in-law noticed Willie's peculiar behavior including Willie's belief that unknown persons were watching him.

Willie's family attempted to procure psychiatric treatment for Willie but he would not voluntarily attend appointments. Emergency detention proceedings were instituted in the Lake County Superior Court. An order was issued on December 14, 1978 for Willie to be taken to the Beatty Memorial Hospital for any treatment necessary "for the preservation of the health and safety of the patient and the protection of persons and property." Willie was transported to Beatty later that day. The next day Renee received a telephone call from a person who identified himself as a doctor and told her that after observation it was determined that Willie could be released. After Renee expressed some concern for her safety if she transported Willie from the hospital, the doctor told her that Willie may be sent home on a bus. Also on December 15, 1978 Willie telephoned his brother-in-law, James Johnson, and requested a ride home. Willie told him that someone would talk to James. The person identified himself as a doctor but James thought it was one of the other patients because he could not understand the person and he did not believe that Willie was being released so soon. James was not told that if no one picked Willie up, Willie would have to walk home.

The staff psychiatrist released Willie with the following order: "discharge as soon as transportation can be arranged." Despite the order Willie was discharged without transportation on December 15, 1978. Apparently Willie was attempting to walk home to Gary when he was struck by an automobile and killed. Willie was clad in lightweight clothing in 28°F weather. He did not have any money. At the time he was struck he was approximately 18 miles from the hospital. Witnesses at the scene thought that Willie was drunk because he was staggering and walking in the traveled portion of the road.

An expert witness testified that hypothermia would cause loss of muscle control. An autopsy revealed that Willie had not ingested drugs or alcohol and that he was suffering from systemic hypothermia.

 Renee brought the instant action for the wrongful death of Willie. At the trial on March 18, 1987 after the estate had presented its evidence, the State moved for a judgment on the evidence which was granted. On appeal the estate presents issues only on its first theory of recovery: that the State negligently discharged and released Willie. The issues presented are:

(1) whether the trial court erred in granting the State's motion for judgment on the evidence at the close of the estate's case; and

(2) whether the trial court erred in excluding opinion evidence offered by the estate through an expert witness.

The estate correctly notes that a judgment on the evidence pursuant to Ind.Rules of Procedure, Trial Rule 50, should not be granted lightly or for the sake of judicial economy, but should only be granted when there is insufficient evidence on an essential element of the case or where a defense to the action is proved by the evidence. *St. Mary's Byzantine Church v. Mantich* (1987), Ind.App., 505 N.E.2d 811, 814. The granting of such a motion is proper only when the evidence is without conflict and susceptible of only one inference in favor of the moving party. *Prudential Ins. Co. v. Winans* (1975), 263 Ind. 111, 119, 325 N.E.2d 204, 207.

To establish its negligence claim against the State, the estate was required to prove a duty, breach of the duty, proximate cause and damages. *Iglesias v. Wells* (1982), Ind. App., 441 N.E.2d 1017, 1019. The relevant inquiry here is whether the State owed any duty to Willie after his release.

IND.CODE § 16–14–9.1–7 (1976) (since amended) governs the hospital's emergency detention procedures. The statute requires the expense of transportation to the hospital to be "borne by the county within which the person was taken into custody." The statute does not however address the responsibility for transportation costs or arrangements upon release of a detainee. The State concludes that no duty was owed because none was affirmatively established by the statute. Moreover, the State argues that the terms of the statute required Willie's release because the attending physician found that Willie was not mentally ill.

▉ The attending physician, Dr. Periolet, determined that Willie might have been in need of some treatment but that he was not a danger to himself or others which required his release pursuant to IND. CODE § 16–14–9.1–7(d) which states:

"If the report is that there is not probable cause to believe that the person is mentally ill and either dangerous or gravely disabled or, if at any time, the superintendent or the attending physi-

cian determines that the person is not mentally ill and either dangerous or gravely disabled, the person shall be discharged from the hospital or center, and a written report of such determination and discharge shall be made a part of the patient's record."

The statute states that the person "shall" be discharged which in the context must be taken as mandatory. Once the State determines that no probable cause exists and yet fails to release the person examined, the basis for a malicious prosecution or a false imprisonment action could be established. *Cf. Treloar v. Harris* (1917), 66 Ind.App. 59, 117 N.E. 975; *Olsen v. Karwoski* (1979), 68 Ill.App.3d 1031, 25 Ill.Dec. 173, 386 N.E.2d 444; Annot., 31 ALR3d 523.

It should also be noted that Willie insisted upon his immediate release. Because Dr. Periolet was acting according to the statute and because the statute does not provide for an extension of the detention to arrange transportation, the State would appear not to have a duty in the present case. However, a common-law duty may exist pursuant to *Iglesias v. Wells, supra,* 441 N.E.2d 1017.

In *Iglesias* an indigent defendant was released from jail in the early morning of February 15, 1979. The defendant claimed that he had inadequate clothing, spoke no English, had no nearby residence, had no transportation and was mentally confused upon his release. After wandering the streets of downtown Indianapolis, the defendant suffered frostbite which necessitated the partial amputation of his feet. The defendant's claim for damages against the sheriff was dismissed by the trial court after it determined that he had failed to state a claim upon which relief could be granted. *Iglesias, supra,* 441 N.E.2d at 1018. This Court reversed and found that "[a] sheriff has a duty not to release *incapacitated* prisoners under circumstances which will subject them to dangers against which they are helpless to defend themselves." (Emphasis in original.) *Iglesias, supra,* 441 N.E.2d at 1021.

In light of the duty created in *Iglesias,* the trial court prematurely granted the

T.R. 50 motion in the present case. Whether Willie was incapacitated within the purview of *Iglesias* thereby giving rise to a duty was a question for the jury to determine.

The estate also questions the trial court's ruling that an expert witness who had not examined Willie could not give opinion testimony regarding Willie's diminished capacity at the time of his release. It is unclear whether the situation will arise on retrial; however, to the extent that the trial court disallowed testimony in the belief that Willie's mental capacity at the time of his release was not "necessarily the issue in this case," the trial court was in error. The duty established by *Iglesias* hinges upon the incapacity of the person released.

Accordingly, the judgment of the trial court must be reversed and the cause remanded for a new trial.

Reversed and remanded.

RATLIFF, C.J., and STATON, J., concur.