**Ronald HADDAD, Jr., Plaintiff–Appellant,**

v.

**Bruce HIGGINS and Family Service and Mental Health Center, Defendants–Appellees.**

No. 02–1827.

United States Court of Appeals, Seventh Circuit.

Submitted April 28, 2003.*

Decided May 7, 2003.

Rehearing and Rehearing En Banc Denied June 2, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

## ORDER

This lawsuit concerns claims of unlawful arrest and false imprisonment resulting from a ten-day psychiatric commitment. The plaintiff, Ronald Haddad, was a student at Dominican University in River Forest, Illinois. In the summer of 1999, he discovered an internet website devoted to the topic of revenge. Over the next two months, using one of his school's computers, he posted approximately ninety messages on the website's bulletin board, venting his spleen against various groups he opposed, particularly the National Organization of Women. These rants typically recommended specific violent actions against these targets, spelling out potential plans, methods, and materials in graphic detail.

Haddad may have intended these postings as nothing more than aggressive fantasy, but when the National Organization of Women found out about them, it took the matter very seriously. The organization alerted the FBI, which initiated an investigation. Haddad was soon identified as the author of the messages and was instructed by university officials to end such postings. One week later, he was confronted outside a classroom and taken to the River Forest police station for questioning by Lieutenant Bruce Higgins and FBI Special Agent Bruce Hartford. At the police department's request, a psychological evaluation was then undertaken by Tammy Schrager and Angelika Rupp, a social worker and an intern from Family Service and Mental Health Center ("Family Services").

Opinions as to Haddad's condition were divided. Special Agent Hartford believed that Haddad was not dangerous, and considered the case closed. Schrager and Rupp, not having spoken to Hartford, reached the opposite conclusion. They

were concerned enough, in fact, that they prepared a petition for involuntary commitment, pursuant to the requirements of 405 ILCS 5/3–601. Schrager asked Lieutenant Higgins to sign the petition, but signed it herself when he refused. Haddad was then taken to Madden Mental Health Center, a state hospital, where Schrager and Rupp presented their petition. After Schrager and Rupp left, however, the intake personnel at Madden asked Haddad to sign a voluntary commitment form, apparently because Illinois law requires a separate medical evaluation prior to involuntary commitment. Eager to get things over with as quickly as possible, Haddad signed the form and was committed for ten days.

Upset about his treatment at the police station, Haddad sued Lieutenant Higgins for false arrest and violation of due process. He claimed that he had been unlawfully detained, arguing that the confiscation of his possessions at the police station and the implicitly coercive conditions of the interview with Higgins and Hartford amounted to an arrest. He argued further that there was no probable cause to support an arrest because, following his school's order, he was no longer posting any threatening messages. Haddad also filed a supplemental state claim of false imprisonment against Family Services, arguing that Schrager and Rupp failed to follow the proper procedures for involuntary commitment.

The defendants moved for summary judgment, Higgins arguing that there was no arrest, Family Services that its employees had acted reasonably and according to statutory procedure. The court concluded that, whether or not there was an arrest, Higgins had probable cause to believe that Haddad had committed the crime of disorderly conduct, and was thus protected by qualified immunity. The court also concluded that Schrager and Rupp reasonably believed that Haddad had a mental condition that made him a danger to others, and that the commitment was therefore lawful. Summary judgment was granted for the defendants.

On appeal, Haddad's argument appears somewhat unfocused. He seems, however, to be saying that the district court construed his false-arrest and false-imprisonment claims too narrowly. He suggests that his claims were less about the mere facts of arrest and commitment, and more about what he saw as a malicious conspiracy among Higgins, Schrager, and Rupp to detain him against his will, using whatever means were available to avoid legal scrutiny. His pro se brief is devoted to narrating the events of that day in a way that comports more fully with his perception of this conspiratorial intent.

■ However, even construed in the light most favorable to Haddad (as is required in reviewing an order of summary judgment, see *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003)), the facts to which he refers do not negate the district court's reasoning. The court was correct that Lieutenant Higgins has qualified immunity against a claim of false arrest if there was probable cause to believe that Haddad had committed disorderly conduct, see *id.; Biddle v. Martin*, 992 F.2d 673, 675, 677 (7th Cir.1993). "Disorderly conduct" is defined as "any act [done] in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace," 720 ILCS 5/26–1(a)(1). The supreme court of Illinois has rejected the view that such an act needs to be public. *People v. Davis*, 82 Ill.2d 534, 45 Ill.Dec. 935, 413 N.E.2d 413, 415 (1980) ("A breach of the peace may as easily occur between two persons fighting in a deserted alleyway as it can on a crowded public street."). A threat, even an indirect

one, can qualify as such an act, see *id.* at 416 (affirming conviction for disorderly conduct based on indirect threat); see also *In re D.W.*, 150 Ill.App.3d 729, 104 Ill.Dec. 156, 502 N.E.2d 419, 421 (1986) (affirming revocation of juvenile's probation based on the disorderly conduct of threatening to "kick [schoolmate's] butt" over a $5 debt), as can "acts and words likely to produce violence in others," *In re B.C.*, 176 Ill.2d 536, 223 Ill.Dec. 919, 680 N.E.2d 1355, 1363 (1997) (upholding charge of disorderly conduct based on display of patently offensive depictions of violence against African Americans). Written communications can constitute disorderly conduct, even communications that do not actually cause a disturbance. See *In the interest of Douglas D.*, 243 Wis.2d 204, 626 N.W.2d 725, 736, 738 (2001). Therefore, even if Haddad's interaction with the police somehow amounted to an "arrest," Lieutenant Higgins had probable cause to believe that Haddad's conduct was disorderly, and Higgins is thus shielded from liability.

As for Haddad's supplemental claim against Family Services for false imprisonment, the district court concluded that Schrager and Rupp's decision to petition for involuntary confinement was reasonable and lawful under the circumstances, and that the claim must therefore fail. See *Olsen v. Karwoski*, 68 Ill.App.3d 1031, 25 Ill.Dec. 173, 386 N.E.2d 444, 451 (1979); see also *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir.1992). Haddad argues that the shift at the mental health center from involuntary to voluntary commitment suggests some sort of procedural irregularity, but that event took place after Schrager and Rupp had submitted their petition and left the premises. Haddad's argument therefore does not call into question the legitimacy of Schrager and Rupp's actions.

The order of the district court is AFFIRMED.