**Eddie GREER, Plaintiff,**

v.

**Richard DeROBERTIS, et al., Defendants.**

**No. 82 C3051.**

United States District Court, N.D. Illinois, E.D.

July 18, 1983.

James A. McKenna, Paul Alexander Rogers, Jenner & Block, Chicago, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen., of Illinois, Steven F. Molo, C. Thomas Hendrix, Jr., Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eddie Greer ("Greer"), a former prisoner at Stateville Correctional Center ("Stateville"), brings this civil rights action against twelve Stateville officials [1] under 42 U.S.C. § 1983 ("Section 1983"), the Illinois Constitution and the laws of Illinois. Greer's Amended Complaint (the "Complaint") has three counts:

1. Count I charges eight of the defendants violated Greer's Eighth Amendment,[2] equal protection and due process rights as well as his corresponding rights under the Illinois Constitution (Art. I, §§ 2 and 11) by punishing Greer for "misusing" state property when he refused to undergo surgery after having been taken to the hospital for that purpose.

2. Count II asserts seven of the defendants (three of whom were named in Count I as well) violated those same rights (except for equal protection) by causing Greer to be placed in segregation (and punished in other respects as well) on the basis of charges known to be false. It also asserts flaws in the disciplinary proceedings.

3. Count III charges Conley, who initiated the disciplinary proceeding at issue in Count II, with malicious prosecution under Illinois law.

Defendants now move to dismiss various aspects of those counts. For the reasons stated in this memorandum opinion and order defendants' motion is granted in part and denied in part.

1. Defendants are Stateville Warden Richard DeRobertis ("DeRobertis"); Stateville Assistant Warden for Programs Salvador Godinez ("Godinez"); Stateville physician Charles Hoffman ("Hoffman"); Stateville Medical Unit Administrator Phillip Elliott ("Elliott"); Stateville Adjustment Committee ("Adjustment Committee") chairman Captain E. Hall ("Hall"); Stateville Captain Kenneth Morgan ("Morgan"); Stateville Inquiry Board member Melvin Allen ("Allen"); Stateville guard Bernard Conley ("Conley"); four unknown Adjustment Committee members, two of whom were on the panel presiding at Greer's April 27, 1982 disciplinary proceeding and the other two of whom participated in Greer's July 27, 1982 disciplinary proceeding.

2. Because defendants are state actors, all Greer's Section 1983 claims are predicated on Fourteenth Amendment violations. Nonetheless citation to the underlying Bill of Rights provisions has become customary, and this opinion will follow that practice.

*Count I*

*Allegations*[3]

In June 1981 Hoffman performed surgery to alleviate Greer's hernia condition. In April 1982 another Stateville physician examined Greer, determined the operation had been unsuccessful and advised Greer to undergo a second operation. Greer then "expressed his desire that the corrective surgery be performed by someone other than defendant Hoffman." Complaint ¶ 13.

Despite Greer's request Hoffman was assigned to perform the operation. Two Stateville guards transported Greer to the hospital the evening before the scheduled surgery. Throughout the night Greer repeatedly told both the guard on duty in his room and hospital personnel (1) he did not want Hoffman to operate on him and (2) he wanted to speak to Hoffman. Complaint ¶ 17. Next morning Greer again expressed his refusal to have Hoffman conduct the operation. Later that morning the guard on duty informed Greer he could return to Stateville without undergoing the scheduled operation. Greer accepted that alternative.

Upon his return to Stateville that same day, Greer received an Inmate Disciplinary Report ("Disciplinary Report") charging his refusal to undergo the operation established a misuse of state property. That Disciplinary Report was issued by Elliott at the direction of Hoffman and was reviewed by Morgan. Complaint ¶ 21. As Greer learned from Elliott several months later, the Disciplinary Report "had been issued because other inmates had also refused treatment by prison physicians prior to plaintiff's refusal to be operated on by defendant Hoffman.... [T]hese other inmates had not been disciplined for refusing treatment." Complaint ¶ 28.

On April 29, 1982 the Adjustment Committee conducted a hearing on the charge. At the hearing Hall apprised Greer of his obligation to pay the state $500 to cover the expenses relating to his overnight stay at the hospital. Hall then told Greer if he signed a promissory note for the $500 he would not be assigned to segregation. After Greer refused to do so the Adjustment Committee found him guilty of the violation. As punishment the Adjustment Committee, with DeRobertis' knowledge and approval, revoked 30 days of his statutory good time credits, demoted him to C grade from A grade for 90 days and ordered him confined to segregation for 60 days. Complaint ¶ 23.

On May 4, 1982 Greer attempted to secure administrative review of the Adjustment Committee determination by sending a grievance letter to Allen. Greer never received a response. Complaint ¶ 25. Later in May Greer was released from segregation because of good behavior. All other sanctions imposed by the Adjustment Committee were apparently fully carried out.

Based on all those allegations, Count I seeks damages against DeRobertis, Hall, Morgan, Hoffman, Elliott, Allen and the two unknown members of the Adjustment Committee.

*Motion To Dismiss*

Defendants attack Count I on several grounds:

1. It fails to allege the requisite personal involvement of Elliott, Hoffman and Morgan in the claimed Eighth Amendment violation—the imposition of disproportionate punishment.[4]

2. Its due process component is not cognizable as to any defendant because (a) the April 29, 1982 disciplinary pro-

3. For motion-to-dismiss purposes, this Court must of course accept the well-pleaded Complaint allegations and draw all reasonable inferences in Greer's favor. It cannot, as defendants' R.Mem. 1–4, 7 and 9–10 would have it do, indulge all kinds of alleged facts dehors the limited record presented by the Complaint itself. Defendants will have their day in court, and it is wholly irresponsible for counsel thus to adduce non-record material (and unverified at that) on a Rule 12(b)(6) motion.

4. Defendants' motion also argued Count I failed to state an Eighth Amendment claim for "deliberate indifference to [Greer's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Because Greer concedes Count I is not grounded on that Eighth Amendment theory of recovery, that contention need not be explored.

ceedings were based on the appropriate quantum of evidence and (b) conditioning sanctions upon Greer's refusal to pay $500 was a permissible effort to enable Greer to rectify his violation of prison rules.[5]

3. Its asserted failure to allege purposeful discrimination against Greer is fatal to his equal protection claim as to all defendants.

4. It fails to state a claim against Allen because Greer has no constitutional right to a grievance procedure.

Each argument will be considered in turn.

Defendants' Eighth Amendment argument has merit. As both sides recognize, Section 1983 liability can be assessed against officials only if they were personally involved in the constitutional deprivation, in this case the imposition of disproportionate punishment. See *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981). Here the Complaint alleges no such personal responsibility on the part of Elliott, Hoffman and Morgan. While they allegedly initiated the disciplinary proceedings (by issuing or causing issuance of the Disciplinary Report), they played no role in determining Greer's guilt or the appropriate punishment. Nor is there any allegation they conspired with the three members of the Adjustment Committee panel who were personally responsible for the claimed constitutional infringement. Consequently Count I's Eighth Amendment claim must be dismissed as to Elliott, Hoffman and Morgan.[6]

Count I's due process claim, however, withstands defendants' motion to dismiss. Its syllogistic legal foundation is certainly sufficient:

1. As defendants' R.Mem. 9 acknowledges, Greer has a constitutional right to refuse medical treatment. See *Lojuk v. Quandt,* 706 F.2d 1456, 1465–66 (7th Cir. 1983).

2. Greer may not be penalized for exercising such a constitutional right. See *Shango v. Jurich,* 681 F.2d 1091, 1103 (7th Cir.1982).

As for the adequacy of the supporting factual allegations, the critical issue is whether defendants placed an impermissible burden on Greer's due process rights by punishing him for "misuse of state property" upon his refusal to pay $500. True enough, requiring Greer (either directly or indirectly by threats of punishment) to bear *actual* expenses *resulting from* his refusal to accept medical treatment would not unduly interfere with his due process rights.[7] But that factual scenario is not compelled by the Complaint. Indeed there is no difficulty in positing other possible circumstances (reasonably inferable from the Complaint) under which the Adjustment Committee's imposition of conditional punishment impinged on those constitutional rights:

1. For example, the actual cost to the state of Greer's brief excursion to the hospital may well have been less than $500.

2. Complaint ¶ 13 suggests Greer adequately apprised Stateville authorities of his decision to forego medical treatment from Hoffman *before* he was taken to the hospital. In that event, the costs of Greer's overnight stay would have been attributable to the actions of others—not to his refusal to undergo surgery.

Accordingly Count I's due process claim clears the pleading threshold.

Defendants' challenge to Count I's equal protection claim deserves short shrift.

5. Again, because Greer disclaims any procedural due process underpinnings for Count I this Court will not address defendants' arguments on that score.

6. Greer argues correctly (Ans.Mem. 3) that "the separate claims for relief in Count I are simply alternative legal theories for relief based on the same set of operative facts." So long as any theory survives, the Count itself survives. Nonetheless this opinion will deal with defendants' motion "to dismiss" the claims for relief—albeit conceptually inaccurate—because it will help to shape the lawsuit.

7. Free members of society would surely have to defray such costs under those circumstances. And this Court perceives no reason why inmates should be treated any differently.

At the very least Complaint ¶¶ 28 and 30 create a reasonable inference as to defendants' discriminatory animus:

1. Complaint ¶ 28 alleges Stateville authorities had never disciplined other inmates who had refused medical treatment by prison physicians before the events at issue here.

2. Complaint ¶ 30 asserts all "aforesaid acts and omission of defendants, acting in their official capacities, were performed intentionally and with reckless disregard for and with deliberate indifference to plaintiff's constitutional rights."

In tandem those allegations suggest Greer was not unintentionally subject to "a mere inconsistency in prison management" or "an erroneous decision" (*Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir.1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979)) but instead was deliberately singled out and punished for conduct others had committed with impunity.

[5, 6] Defendants' final assault against Count I—its failure to state a claim against Allen—fares better. Count I alleges Allen, as a member of the Inquiry Board, participated personally in unconstitutional deprivations occasioned by the April 29 disciplinary proceedings by failing to respond to Greer's grievance letter. While those allegations disclose Allen's knowledge of and power to remedy the claimed constitutional violations, they fail to establish Allen's *obligation* (under federal law as opposed to state legislative or administrative law) to exercise that power. And that critical aspect of Section 1983's requirement of direct personal responsibility cannot be satisfied as a matter of law (absent any allegation of conspiracy with those Stateville officials who presided at the April 29 disciplinary hearing). As Greer concedes, the Fourteenth Amendment does not mandate administrative review of prison disciplinary actions.[8] See *Azeez v. DeRobertis,* 568 F.Supp. 8, 10 (N.D.Ill.1982); *United States ex rel. Wolfish v. Levi,* 439 F.Supp. 114, 163–64 (S.D.N.Y.1977), *aff'd in relevant part sub nom. Wolfish v. Levi,* 573 F.2d 118 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That well-settled proposition necessarily undercuts Greer's bald assertion that Allen was obligated to respond to his grievance, for that is just another way of saying Greer was entitled to invoke Stateville's grievance machinery.

### *Counts II and III*

#### *Allegations*

Counts II and III are based on a common factual account. On July 15, 1982 Greer received a Disciplinary Report "issued by defendant Conley and reviewed by defendant Morgan." Complaint ¶ 48. That Disciplinary Report falsely accused Greer of attempting to bribe and blackmail Conley to bring narcotics into Stateville. Conley "knew the charge was false when he issued this Disciplinary Report." *Id.* When informed by Greer of the Disciplinary Report, Godinez said he would insure "the charge was dropped and that [Greer] was not punished." Complaint ¶ 49.

On July 23, 1982 the Adjustment Committee conducted a hearing on the charge. At that hearing Greer asserted his innocence, asked that certain witnesses be called in his behalf and volunteered to take a polygraph examination. Both requests were refused by the Adjustment Committee, which found Greer guilty, sentencing him to 180 days in disciplinary segregation and revoking 180 days of his good time credits.

On October 28, 1982 Greer took a polygraph examination, the results of which exonerated him from the charge in the July 15 Disciplinary Report. Complaint ¶ 53. Consequently the prison authorities released Greer from disciplinary segregation, compensated him for income lost while in segregation and expunged the Disciplinary Report from his master file.

8. Neither Greer nor any case law on point suggests the inapplicability of that principle to disciplinary proceedings in which the inmate advances federal constitutional claims.

Count II is brought against DeRobertis, Hall, Conley, Morgan, Godinez and the two members of the Adjustment Committee. Count III names only Conley.

*Motion To Dismiss*

Morgan seeks dismissal from Count II on the ground his personal involvement in the claimed constitutional deprivations was not adequately alleged. Morgan is right. Count II says only that he "reviewed" the allegedly false Disciplinary Report. At most that allegation establishes Morgan's role in initiating—not conducting—the disciplinary proceeding against Greer. But for the reasons already noted, that allegation is an insufficient predicate for holding Morgan accountable for any imposition of disproportionate punishment by the Adjustment Committee. Morgan's lack of involvement in the disciplinary proceedings similarly exculpates him from any liability for due process violations (e.g., refusal to call Morgan's witnesses) that occurred in the course of those proceedings. Even had the Complaint alleged Morgan's knowledge of the falsity of the Disciplinary Report (and it plainly did not [9]), Morgan still could not—as a matter of law—be found liable for those claimed constitutional infringements [10] unless he had conspired with those who bore direct responsibility for the violations—the Adjustment Committee members. And not even Greer suggests the Complaint hints at such a conspiracy. Accordingly Morgan must be dismissed from Count II.[11]

As for Count III—the pendent claim of malicious prosecution—Conley (the only defendant against whom that count is directed) advances two grounds for dismissal:

1. Prison disciplinary hearings are not civil or criminal judicial proceedings on which malicious prosecution claims can be based.
2. Count III fails to allege termination of the July 23 disciplinary proceeding in Greer's favor—another component of a malicious prosecution claim.

Because Conley's first argument is persuasive, this Court will not reach the second.

As *Ritchey v. Maksin,* 71 Ill.2d 470, 475, 17 Ill.Dec. 662, 664, 376 N.E.2d 991, 993 (1978) teaches, one element of a malicious prosecution cause of action is "the commencement or continuance of an original criminal or civil judicial proceeding." That requirement cannot be relaxed to embrace prison disciplinary proceedings. Though no Illinois case has addressed that issue, the Illinois courts unanimously agree the elements of a malicious prosecution claim must be strictly construed. *See, e.g., Franklin v. Grossinger Motor Sales, Inc.,* 122 Ill.App.2d 391, 396–97, 259 N.E.2d 307, 309 (1st Dist. 1970). That admonition forecloses this Court from extending the malicious prosecution tort to the circumstances alleged here.[12]

**9.** Morgan's lack of such knowledge is the only reasonable inference that can be deduced from the Complaint's silence on that score:

1. In the very same paragraph that asserts Morgan's "review" of the Disciplinary Report, the Complaint expressly alleges Conley's knowledge of the charge's falsity.
2. Given the nature of the charge (Greer's attempt to bribe and blackmail Conley), only Conley would likely have had personal knowledge of its validity. Therefore, unless Conley had told Morgan the charge was trumped up (and there certainly is no allegation to that effect), Morgan could not possibly have discerned its falsity simply by "review[ing]" the Disciplinary Report itself.

**10.** Such knowledge however might expose him to liability for malicious prosecution to the extent the other elements of that tort were present—an unwarranted assumption, as this opinion will shortly point out.

**11.** Defendants' R.Mem. 13–14 seeks to expand their Count II motion to embrace all other defendants save Conley. That will not be permitted by way of reply, for Greer's counsel has not had the opportunity to respond to that newly-advanced contention. Accordingly those defendants are required to answer Count II unless Greer's counsel concede they have nothing to offer that would differentiate those defendants from Morgan on the analysis in the text.

**12.** *Olsen v. Karwoski,* 68 Ill.App.3d 1031, 25 Ill.Dec. 173, 386 N.E.2d 444 (1st Dist.1979) (which neither party cites) may perhaps signal a limited departure from strict adherence to the prerequisite of a "criminal or civil judicial proceeding" in the administrative context. But

*Conclusion*

Defendants' motion to dismiss is granted only to the following extent:

1. Greer's Eighth Amendment claim in Count I is dismissed as to Elliott, Hoffman and Morgan.

2. All claims in Count I are dismissed as to Allen.

3. Count II is dismissed as to Morgan.

4. Count III is dismissed.

In all other respects, defendants' motion is denied. All defendants still in the case are ordered to answer the Complaint on or before July 29, 1983.

because at the same time it really renews emphasis on that prerequisite, it affords no basis for upholding Count III. *Olsen* sustained a malicious prosecution claim against two physicians who had plaintiff involuntarily admitted into a mental hospital for emergency treatment, but only because such admission was linked to judicial proceedings (68 Ill.App.3d at 1036, 25 Ill.Dec. at 179, 386 N.E.2d at 450):

> Dr. Dulin argues that a proceeding for emergency admission under section 7-1 of the Mental Health Code is not a judicial proceeding. However, when this section is read in conjunction with other provisions of the code, it is evident that the procedures set forth in section 7-1 are acts which initiate the judicial process required to commit a person for mental treatment. Section 7-6, for example, requires that within 24 hours of an emergency admission, the superintendent of the admitting hospital file the physician's certificate and the petition with the circuit court. The court must then set the case for hearing within 5 days. The petition and certificate for emergency admission are, therefore, the initial steps which set in motion the judicial process for commitment and their presentation to the superintendent of a hospital is part of that judicial process.

By contrast, the disciplinary proceeding instituted by Conley was not part of any adjudicatory scheme that would necessarily culminate in a civil or criminal judicial proceeding.