### Robert SAUNDERS

v.

### Commissioner Martin HORN, et al.

### Civil Action No. 95–7844.

United States District Court, E.D. Pennsylvania.

Dec. 23, 1996.

Robert Saunders, Georgetown, DE, pro se.

Beth Anne Smith, Office of Attorney General, Philadelphia, PA, for Defendants.

## REPORT AND RECOMMENDATION

WELSH, United States Magistrate Judge.

The plaintiff has filed a civil rights action pursuant to 42 U.S.C. § 1983. He is a Delaware inmate. However, from September 22, 1995 until March 1, 1996, he was incarcerated within the Commonwealth of Pennsylvania. On November 22, 1995, he was transferred from SCI–Camphill to SCI–Graterford. It appears that he remained at SCI–Graterford until he was returned to Delaware. Most of his allegations concern what occurred to him while at SCI–Graterford.

The plaintiff has sued Martin Horn, the Commissioner of Pennsylvania's Department of Corrections, Donald T. Vaughn, the Superintendent of SCI–Graterford, I. Murphy, Sgt. Harmon and Sgt. Thomas, three SCI–Graterford officers. Defendants Horn and Vaughn have filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure

12(b)(6). The plaintiff has been granted two extensions of time to respond to this motion but he has failed to do so. The time to respond provided for in the second extension has now passed and the court will consider the defendants' unopposed motion.

## I. Standard of Review

In considering a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), the court:

> must determine whether, under any reasonable reading of the pleadings, the plaintiff[ ] may be entitled to relief, and [the court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993). The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action. Since this is a § 1983 action, the plaintiff[ ] is entitled to relief if [his] complaint sufficiently alleges deprivation of any right secured by the Constitution. *Id.* In considering a Rule 12(b)(6) motion, [the court] does not inquire whether the plaintiff[ ] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] (1974). [A motion to dismiss can be granted] only if it appears that the plaintiff[ ] could prove no set of facts that would entitle [him] to relief. *Conley v. Gibson,* 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] (1957).

*Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996).

## II. Facts

With this standard of review in mind, the following are the facts assumed to be true. The plaintiff has been serving a life sentence since April 1976. Since 1984, he has been wearing orthopedic shoes and walking with the aid of a cane. These items were prescribed by an orthopedist. In early 1995, an MRI revealed that he was "suffering from disk degeneration in areas of L–5, S–5 . . . of spine." On September 22, 1995, the plaintiff was transferred from a Delaware prison to

SCI–Camphill. Upon arriving at SCI–Camphill, an official of that prison took away the plaintiff's orthopedic shoes and his brace.[1] The plaintiff was told that, if these items were needed, a doctor at SCI–Camphill would order them. Since that time, he has had to "wear regularly issued shoes, which cause him constant pain."

On November 22, 1995, the plaintiff was transferred to SCI–Graterford. Upon his arrival, defendant Harmon placed him in a cell with an inmate who had been placed in disciplinary status for assaulting a correctional officer. On November 28, 1995, he was informed by the Program Review Committee that he should be assigned into the general population. He told defendants Thomas and Murphy of this information but they left him in the same cell, where he was locked in 24 hours a day and fed in the cell. In spite of his physical condition, he was required to climb onto the top bunk.

On December 1, 1995, the plaintiff was assigned a new cellmate. This new cellmate had been sentenced by the Disciplinary Committee to cell restriction. The plaintiff was only permitted to leave his cell to receive his medication and to shower once every three days. Prior to December 1, 1995, the plaintiff had only had one cold shower.

The plaintiff complained to defendants Murphy, Harmon and Thomas about being kept locked in his cell 24 hours a day. He informed them that he had not violated any disciplinary rules prior to leaving SCI–Camphill. His grievances were ignored and he then wrote letters to defendants Horn and Vaughn.

On December 6, 1995, he was taken to a different cell and he was afforded some privileges, which he does not specify. He was not, however, given an identification card, which prevented him from borrowing law books from the law library. Although he had litigation pending in Delaware before he came to Pennsylvania, the plaintiff was un-able to use the available law books and Commissioner Horn failed to provide him with Delaware law books. For reasons which he does not explain, he had to be accompanied by a correctional officer in order to pick up his legal mail. This meant that, on some occasions, he had to wait up to three days to receive his legal mail.

The plaintiff was not issued clothing. He was forced to wear the clothes of another inmate. He was not able to use the commissary because he was not issued an identification card. He complains that the showers and toilets at SCI–Graterford are not designed to accommodate inmates with disabilities. The sinks overlap the toilets. This prevents an inmate from sitting up straight. As a result, the plaintiff must sit bent over, which causes him "severe discomfort". Because of the showers' non-accommodating design, on one occasion, the plaintiff slipped and fell down.

The plaintiff alleges that all defendants have violated his rights to equal protection, due process and to be free from cruel and unusual punishment. He claims that each defendant is aware of the conditions he complains of because he has informed each defendant of these conditions.

## III. Discussion

■ Defendants Horn and Vaughn first argue that the complaint should be dismissed because it fails to allege that they were personally involved in the alleged wrongful conduct. The Third Circuit has held that, to be liable in § 1983 cases, a defendant must be personally involved in the alleged wrongful conduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Personal involvement can be shown through personal direction or through actual knowledge and acquiescence. *Id.*

---

1. It is not clear whether the plaintiff meant to refer to his cane rather than to a brace. In the complaint he says his brace, not his cane, was taken from him. However, at no part of his complaint does he allege that he had been prescribed a brace for his condition. To further confuse matters, in the last paragraph of his factual allegations, the plaintiff complains that he is forced to go through the food line, while carrying his tray, juice and while walking with a cane. This would suggest either that the SCI–Camphill official did not seize his cane or that the plaintiff obtained a new cane at some point after his arrival at SCI–Camphill.

■ The plaintiff has alleged that he informed defendants Horn and Vaughn of the conditions he has faced. This allegation must be assumed to be true at the motion to dismiss stage. Based on this allegation and on the fact that defendants Horn and Vaughn are the superiors of the other named defendants, one could reasonably infer that defendants Horn and Vaughn acquiesced in the acts which caused the conditions the plaintiff complains of. This is sufficient to plead personal involvement and the defendants' motion to dismiss cannot be granted based on their first argument.[2]

■ The defendants next argue that the complaint fails to state a claim for denial of medical care. Under the Eighth Amendment, the government has an obligation to provide medical care for inmates. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). For an inmate plaintiff to establish that his Eighth Amendment rights were violated by a defendant's failure to provide medical care, he must demonstrate not only that he had a serious medical need, but also that the defendant acted with deliberate indifference toward that serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 2323–24, 2326–27, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. at 104, 106, 97 S.Ct. at 291, 292. Deliberate indifference exists when the defendant knows of and disregards an excessive risk to the plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

■ A medical need is "serious" if it has been diagnosed by a physician as requiring treatment; when prison officials prevent an inmate from receiving recommended treatment for a serious medical need, they have acted with deliberate indifference. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987).

■ The plaintiff has alleged that a physician prescribed orthopedic shoes for him in 1984. This means that he has a serious medical need. He also alleges that his orthopedic shoes were taken from him on the day he arrived at SCI–Camphill. Thereafter, he wrote to defendants Horn and Vaughn to apprise them of his medical need and to request that he be given the proper footwear. The failure to provide the proper footwear caused him to suffer constant pain. In spite of being provided this information, defendants Horn and Vaughn did nothing. Their act of ignoring this information constitutes deliberate indifference to the plaintiff's serious medical need.

■ The defendants next argue that the complaint does not state a claim for violation of the right to court access. Inmates have a constitutional right of access to

---

2. In the section of their memorandum of law concerning personal involvement, the defendants cite *Griffin v. Spratt*, 768 F.Supp. 153, 158 (E.D.Pa.1991), *reversed on other grounds*, 969 F.2d 16 (3d Cir.1992) and *Greer v. DeRobertis*, 568 F.Supp. 1370, 1375 (N.D.Ill.1983) in support of their view that "a correctional official's failure to respond to an inmate's request, grievance or internal complaint does not give rise to a viable Section 1983 claim." Defendants'.Memorandum of Law at 4. However, in *Griffin*, the district court did not hold that a prison official's failure to respond to a inmate's grievance did not constitute personal involvement under *Rode v. Dellarciprete*. Instead, the district court held that denying an inmate's grievance did not constitute a violation of the inmate's due process rights. *Griffin*, 768 F.Supp. at 158. Therefore, *Griffin* is inapposite to the question of personal involvement.

In *Greer*, the court held that a member of an inquiry board was not personally involved in an inmate's allegedly wrongful discipline when the board member failed to respond to the inmate's grievance letter. *Id.* at 1375. The inmate sent the grievance letter in an effort to obtain administrative review of the discipline imposed upon him. *Id.* at 1373. In the court's view, the inmate's letter gave the board member knowledge of the alleged wrongful conduct but it did not establish that the board member had the obligation under federal law to exercise review of the discipline meted out. *Id.* at 1375. Indeed, the court observed that the Fourteenth Amendment did not mandate administrative review of prison disciplinary decisions. *Id.* Therefore, the board member could not be liable in a § 1983 action. *Id.* The Third Circuit has never held that, assuming actual knowledge, a prison official cannot acquiesce in alleged wrongful conduct unless the official has the obligation under federal law to correct the alleged wrong. In the absence of Third Circuit precedent, I would decline to so hold. Further, in this case, the plaintiff does not seek to hold defendants Horn and Vaughn liable for failing to grant him administrative review of a prison disciplinary decision. Thus, *Greer* is distinguishable from this case.

the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977). However, the scope of that right was limited to a great degree by the Supreme Court's decision in *Lewis v. Casey,* —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In *Lewis,* the Court held that in order to have standing to raise a claimed violation of the right to court access, an inmate must show an actual injury. *Id.* at ——, 116 S.Ct. at 2179. In order to show an actual injury, an inmate must show that his efforts to pursue a nonfrivolous[3] legal claim were hindered by the defendants. *Id.* at —— – ——, 116 S.Ct. at 2180–81. The Court noted that an example of an actual injury would occur if the complaint was dismissed for failure to satisfy a technical requirement which the plaintiff was not aware of because of some act or omission of the defendants. *Id.* at ——, 116 S.Ct. at 2180.

 The plaintiff has not alleged that his problems with obtaining access to law books or his legal mail caused him to suffer an actual injury to his right to court access. Thus, his complaint does not state a claim for violation of his right to court access and the defendants' motion to dismiss should be granted with respect to this claim.

The defendants next argue that the complaint does not state a claim for violation of the plaintiff's right to procedural due process because, under the method of analysis required by *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the plaintiff was not exposed to "atypical and significant hardship" during his time at SCI–Graterford.

 The right to procedural due process arises once a plaintiff establishes that he has a protected liberty interest of which the government seeks to deprive him. Protected liberty interests can arise from the due process clause itself or from state law. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Based on the allegations contained in the complaint, it appears that the protected liberty interest the plaintiff

asserts is the right to be placed in the general prison population. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court concluded that its decisions in related cases compelled the conclusion that inmates do not have a liberty interest arising from the due process clause itself in remaining in the general prison population. *Id.* at 468, 103 S.Ct. at 869–70. Although the plaintiff's asserted liberty interest is slightly different from that at issue in *Hewitt,* I conclude that the holding in *Hewitt* is of equal force in this case and that the plaintiff does not have a protected liberty interest arising from the due process clause itself in being placed in the general prison population.

In *Sandin v. Conner,* the Supreme Court materially changed the analysis that must be applied when determining whether an inmate had a liberty interest created by state law. The Court abandoned the methodology that it had used since *Hewitt,* which parsed statutes and regulations to determine whether they contained mandatory language which limited official discretion, and instead focused on whether the interest asserted constituted a "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at ——, 115 S.Ct. at 2300.

After announcing this rule of law, the Court compared the conditions of disciplinary segregation plaintiff Conner endured with lesser forms of disciplinary custody and ordinary custody in the Hawaii prison system. *Id.* at ——, 115 S.Ct. at 2301. The Court concluded that the conditions he suffered did not "present a dramatic departure from the basic conditions of Conner's indeterminate sentence", and, hence, "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* Thus, *Sandin* requires that the court compare the conditions

---

**3.** The Court noted that the claim had to be non-frivolous because "depriving someone of a frivolous claim, . . ., deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions." *Lewis v. Casey,* —— U.S. at —— n. 3, 116 S.Ct. at 2181 n. 3.

the plaintiff sought to avoid with those in general population to determine if the less desirable conditions constitute an atypical and significant hardship in relation to the ordinary incidents of the plaintiff's prison life.

 Neither the plaintiff nor the defendant have explained what conditions of confinement inmates in general population face. For this reason, the court cannot adequately compare the conditions in general population to the conditions the plaintiff faced. For example, the court does not know how much time out of their cells general population inmates spend, how much exercise they have each day and for how many days per week, or how many showers per week they can have. By contrast, the record before the Court in *Sandin* was detailed enough that the Court could observe that even general population inmates were confined to their cells for twelve to sixteen hours a day. *Sandin*, 515 U.S. at —— n. 8, 115 S.Ct. at 2301 n. 8. Since the record in this case is incomplete, I will not recommend dismissing the plaintiff's procedural due process claim against defendants Horn and Vaughn based on the plaintiff not having a liberty interest created by state law.[4] *Accord Gotcher v. Wood*, 66 F.3d 1097, 1101 (9th Cir.1995) (The court reversed the dismissal of the complaint because the record before it did not enable the court to determine whether the disciplinary segregation at issue imposed atypical or significant hardship on the plaintiff.).

 The defendants also move to dismiss the plaintiff's equal protection claim on the ground that he fails to allege that he was treated differently from similarly-situated inmates. The equal protection clause requires government to treat similarly-situated persons alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The complaint does not allege that the plaintiff was treated differently from other inmates with similar health problems. Instead, he claims that all inmates with similar health problems would be treated poorly, as he was. While his allegations state a claim for violation of his Eight Amendment rights, they do not state a claim for violation of his equal protection rights. Likewise, he does not claim that other out of state inmates were given better access to law books or legal mail. In fact, there is no mention at all with respect to how out of state inmates were treated in this regard. In short, his complaint fails to state a claim for violation of his equal protection rights and the defendants' motion should be granted with respect to this claim.

The defendants also argue that the complaint does not state a claim for violation of the plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The ADA is divided into four subchapters or "Titles". Title II applies to public entities, which are defined as any state or local government or any department or agency of a state or local government. 42 U.S.C. § 12131(1). Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

 The defendants initially argue that the Title II of the ADA does not apply to prisons. In *Inmates of Allegheny County Jail v. Wecht*, No. 95–3402, 1996 WL 474106 (3d Cir. Aug. 22, 1996) (vacated for rehearing *en banc*), the Honorable Louis H. Pollak, writing for the panel, addressed this question. As he noted, on its face, Title II of the ADA covers "all aspects of state and local governance." *Id.* slip op. at 12. As he concluded, this would include prisons. *Id.* at 21. Judge Pollak also distinguished *Bryant v. Madigan*, 84 F.3d 246 (7th Cir.1996) and *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996), two cases relied upon by defendants Horn and Vaughn. *Inmates v. Wecht*, slip op. at 4–2. Therefore, I will not recommend dismissing the plaintiff's

---

**4.** The defendants have not moved to dismiss the complaint based on the ground that they afford-ed the plaintiff all the process due him.

ADA claim on the ground that Title II of the ADA does not apply to prisons.[5]

■ The next question is whether the allegations in the complaint state an ADA claim. The Third Circuit has held that the standard for liability under the ADA is the same as the standard for liability under the Rehabilitation Act of 1973 ("RA")[6]. *McDonald v. Pennsylvania Department of Public Welfare,* 62 F.3d 92, 94–95 (3d Cir.1995). The elements of an RA claim are: (1) that the plaintiff is an individual with a disability, (2) that the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program, (3) that the plaintiff was excluded from the program solely by reason of his or her disability, (4) that the program receives federal funds. *Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1009 (3d Cir.1995). Because the ADA does not require that the service, program or activity receive federal funds, only the first three elements are relevant to an ADA claim.

■ The ADA defines disability as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The applicable regulations provide further guidance regarding the definition of disability. The regulations list a physiological disorder or condition affecting the musculoskeletal system as an example of a "physical impairment". 28 C.F.R. § 35.104. The plaintiff alleges that he has degenerative disk disorder in his spine. This sort of disorder is within the ambit of the applicable ADA regulations. The regulations list caring for one's self, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning and working as examples of "major life activities". *Id.* The plaintiff alleges that he has difficulty walking because of his physical impairment. He alleges that he suffers pain when going to the bathroom because of his physical impairment and because of the way the prison's facilities are designed. He also alleges that the showers are designed in a manner that places him at risk of injury because of his physical impairment. This is sufficient to allege that he suffers limitations in one or more major life activities. Thus, the plaintiff has alleged that he is disabled within the meaning of the ADA and the applicable regulations.

■ The plaintiff complains of the bathroom and shower facilities at SCI–Graterford. The ADA does not define "service, program or activity". Neither do the applicable regulations. However, "service" is ordinarily defined to mean "a facility providing the public with the use of something." *Webster's II New Riverside University Dictionary* at 1066 (1984). Further, the regulations require public entities to alter their existing facilities in order to accommodate people with disabilities. *See* 28 C.F.R. § 35.150. The goal is to see that the public entity's facilities are "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The plaintiff alleges that the existing facilities at SCI–Graterford did not provide readily accessible bathroom and shower facilities. This is an appropriate claim under the applicable regulations.[7]

■ The plaintiff must also plead that he was excluded from the service, program or activity solely by reason of his disability. Based on the allegations contained in the complaint, one can infer that the plaintiff suffered pain when using the facilities at SCI–Graterford because of his disability.

---

5. The defendants have not moved to dismiss the ADA claim on the ground that Title II applies only to public entities and not to individuals. However, there is authority for holding individuals liable under Title II of the ADA. *Niece v. Fitzner,* 922 F.Supp. 1208, 1218–19 (E.D.Mich. 1996); *Doe v. Marshall,* 882 F.Supp. 1504, 1507 (E.D.Pa.1995).

6. The Rehabilitation Act of 1973 is codified in various sections of Title 29 of the United States Code.

7. The applicable regulations state that a public entity can avoid its responsibility to make its facilities readily accessible to individuals with disabilities if it establishes that doing so would "result in a fundamental alteration in the nature of the service, program or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.150(a)(3).

Therefore, the plaintiff has sufficiently pled the third element of his ADA claim. Because the plaintiff has pled all three elements of an ADA claim, the defendants' motion to dismiss cannot be granted with respect to this claim.

■ Finally, the defendants move to dismiss the plaintiff's prayer for injunctive relief on the ground that he is no longer incarcerated at SCI–Graterford. They represent that on March 1, 1996, the plaintiff was returned to the state of Delaware's prisons. In his September 8, 1996 motion for enlargement of time, the plaintiff admitted that he left Pennsylvania on March 1, 1996 and he gave his address as: Post Office Box 500, Georgetown, Delaware. Although the defendants are not confining themselves to the pleadings in advancing their argument, Federal Rule of Civil Procedure 12(b) allows the court to convert a motion to dismiss into a motion for summary judgment if matters outside the pleading are considered. I will recommend doing so in this case. As there is no dispute that the plaintiff is no longer incarcerated at SCI–Graterford, his prayer for injunctive relief is moot. *See Muslim v. Frame,* 891 F.Supp. 226, 228 (E.D.Pa.1995).

My recommendation follows.

### RECOMMENDATION

AND NOW, this 23rd day of December, 1996, for the reasons contained in the preceding Report, it is hereby RECOMMENDED that defendants' motion to dismiss be GRANTED with respect to the plaintiff's right to court access claim and equal protection claim. It is also RECOMMENDED that the defendants' motion to dismiss be DENIED with respect to the plaintiff's Eighth Amendment claim, procedural due process claim and Americans with Disabilities Act claim. It is further RECOMMENDED that the defendants' motion to dismiss be converted into a motion for summary judgment with respect to the plaintiff's prayer for injunctive relief and that the defendants be granted summary judgment with respect to the prayer for injunctive relief.