Fremont-Smith, J.
INTRODUCTION
The defendants, a number of employees and officials of the Department of Correction (“DOC”), have moved this Court, pursuant to Mass.R.Civ.P. 12(b)(6), to dismiss plaintiff Paul F. Shedlock’s complaint.[2] For the following reasons, the defendants’ motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
In his verified complaint, the plaintiff avers the following facts. On October 31, 1997, he was transferred to the “8-block” of MCI-Norfolk and on December 23, 1997, the plaintiff, who allegedly suffers from severe arthritis, sciatica, ankle and back pain, was told by defendant Hamm that he was being moved to a cell on the second floor of the cell block. The plaintiff, fearing that he could not climb the stairs, or that he might fall down the stairs, because of his physical impairments, requested a cell on the first floor. Hamm allegedly told the plaintiff, “We don’t cater to cripples,” and then conferred with defendant Wilson in Wilson’s office. Thereafter, Wilson emerged from his office, and after hearing plaintiffs explanation, stated, “You’ll either go upstairs or you’ll go to the R.B.” (The R.B. is the disciplinary segregation unit.) Plaintiff, hoping to avoid falling down the stairs, chose the R.B. Upon his release from the R.B. on December 31, 1997, plaintiff was assigned to a cell on the first floor.
Wilson filed a disciplinary report against the plaintiff for his refusal to accept a housing assignment. In January 1998, plaintiff was convicted of the charged offense and sanctioned. Plaintiff alleges that at the disciplinary hearing, the hearing officer, defendant Parks, stated to the plaintiff that he should just accept the guilty finding, rather than appeal, or his “stay at Norfolk would be very bad.” Despite this warning, plaintiff appealed; this appeal was denied by defendant Hall on February 2, 1998.
On February 4, 1998, plaintiff was examined by a physician, who issued a medical order[3] requiring that plaintiff be housed on the first floor.
Despite this order, on February 5, 1998, the plaintiff was again told by defendant Hamm that he had been reassigned to a cell on the second floor. Plaintiff avers that after he told Hamm of the medical order, Hamm entered Wilson’s office. After several minutes, Wilson emerged and again told plaintiff to move to the second-floor cell or be confined in the R.B. This time, plaintiff chose the second-floor cell.[4]
After this move, plaintiff spoke to defendants Krantz and Hall about his cell assignment, but both advised him that Wilson had total authority in this area.
Plaintiff claims that the defendants Wilson, Parks and Hamm conspired to deprive the plaintiff of equal protection of the laws in violation of 42 U.S.C. §§1985(3); Hall and Krantz failed to prevent such conspiracy in violation of 42 U.S.C. §1986; Wilson, Hamm and Parks violated the Massachusetts Civil Rights Act, G.L.c. 12, §§11-H-I; and all defendants violated the Americans with Disability Act, 42 U.S.C. §§12101 et seq., G.L.c. 22 §13A and 103 DOC §108, DOC policy concerning disabled inmates. As discussed below, plaintiffs claims under G.L. 22, §13A arid 103 DOC §108.01 are dismissed as neither provides for a private cause of action. Plaintiffs claims under 42 U.S.C. §§1985(3) and 1986 are also dismissed. Plaintiffs claims under G.L.c. 12, §§11H-I and 42 U.S.C. §§12101, et seq. remain.
DISCUSSION
“When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor.” Fairneny v. Savogren Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although pro se complaints such as the plaintiffs are held to a somewhat less stringent standard, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the same rules “bind a pro se litigant.” Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985).
I. 42 U.S.C. §§1985(3) and 1986
A person may seek relief under 42 U.S.C. §1985(3) for a deprivation of rights, secured by the Constitution or federal statute, resulting from a conspiracy motivated by invidious discrimination. See Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971). 42 U.S.C. §1986 imposes liability upon a person who, having knowledge that “any of the wrongs conspired to be done, and mentioned in §1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so . . .” 42 U.S.C. §1986.
For a §1985 claim to withstand a motion to dismiss, a complaint must allege that the defendants did (1) *21 conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal protection of the laws; (3) did, or caused to be done, any act in furtherance of the conspiracy whereby another was (4) injured in his person or property or deprived of having and exercising any rights or privilege of a citizen of the United States. Griffin, supra, at 102-103. See Bricker v. Crane, 468 F.2d 1228, 1232 (1st Cir. 1972), cert. denied, 410 U.S. 930 (1973).
The plaintiff must allege that the conspiracy was fueled by some “class-based, invidiously discriminatory animus.” Bray v. Women’s Health Clinic, 506 U.S. 263, 268 (1993). The First Circuit has held that this requirement is met where the identifiable group in which the plaintiff claims membership would trigger heightened scrutiny under the Equal Protection Clause, as with suspect or quasi-suspect classifications. See Piacentini v. Levangie, 998 F.Supp. 86, 91 (D.Mass. 1998), citing Libertad v. Welch, 53 F.3d 428, 448 (1st Cir. 1995). Plaintiffs claims under 42 U.S.C. §§1985 and 1986 must be dismissed as the group in which he claims membership, i.e., the physically disabled, has not been afforded suspect or quasi-suspect status.[5] See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 442-43 (1985) (mentally retarded not a suspect or quasi-suspect class);[6] Vizard v. Kwiatkowski, No. 95-40172-NMG, 1997 WL 813005 at *4 (D. Mass. 1997) (unreported) (applying Cleburne to hold physically disabled not a suspect or quasi-suspect class).
II.G.L.c. 22 §13A and 103 DOC §108.01
Plaintiffs claims under G.L.c. 22 §13A and 103 DOC §108.01 are appropriately dismissed as neither provides for a private cause of action.
While G.L.c. 22, §13A authorizes the Architectural Access Board to receive complaints of noncompliance with the statute from any person, it limits enforcement capability to a select group of officials. See G.L.c. 22, §13A (‘The provisions of this section and all rules and regulations made hereunder shall be enforced by the inspector of buildings, building commissioner, local inspector and inspector . . .”).
Similarly, 103 DOC §108.01 merely sets forth DOC’s internal policy concerning handicapped inmates and does not create a cause of action for inmates. See Martino v. Hogan, 37 Mass.App.Ct. 710, 720-21 (1994), review denied, 419 Mass. 1106 (1995) (DOC regulations found in Code Mass. Regs. do not create a private right of action).
III.G.L.c. 12, §§11H-I
To maintain a cause of action under the Massachusetts Civil Rights Act, a plaintiff must allege interference with his civil rights by means of threats, intimidation or coercion.[7] Matthews v. Rakiey, 38 Mass.App.Ct. 490, 492 n.5, review denied, 420 Mass. 1107 (1995). Taking as true the averments of plaintiff s complaint as is required, Bell v. Mazza, 394 Mass. 176, 183 (1985), plaintiff has sufficiently alleged claims against defendants Wilson, Parks and Hamm.
Each of these defendants allegedly took action against the plaintiff that could be construed as threatening, intimidating or coercive, which thereby deprived the plaintiff of rights protected by the ADA. On two occasions, Wilson allegedly told plaintiff that he had to proceed to a second-floor cell, despite his disabilities, or be confined in the disciplinary segregation unit. Hamm similarly tried to force plaintiff to proceed to a second-floor cell after stating, “We don’t cater to cripples.” Parks also allegedly threatened plaintiff with retaliation for appealing the outcome of his disciplinary hearing in stating that his “stay at Norfolk would be very bad” if he appealed. Plaintiff has adequately alleged violations of his rights under the Massachusetts Civil Rights Act.
IV.42 U.S.C. §§12101, et seq.
Title II of the Americans with Disabilities Act (“ADA”) prohibits discrimination against disabled persons in the provision of services and programs by a public entity.[8] See 42 U.S.C. §12132. As State prisons are encompassed by the ADA, an inmate may maintain an action for violations of his rights thereunder. Pa. Dep’t of Correction v. Yeskey, 118 S. Ct. 1952, 1954 (1998); Crawford v. Ind. Dep’t of Corrections, 115 F.3d 481, 486 (7th Cir. 1997).
To prevail on his ADA claim, the plaintiff must be able to prove that (1) he is a handicapped person; (2) he is otherwise qualified; and the defendants’ actions either (3) excluded his participation in or denied him the benefits of a service, program or activity; or (4) otherwise subjected him to discrimination on die basis of his physical handicap. See Duffy v. Ireland, 98 F.3d 447, 455 (9th Cir. 1996); Saunders v. Horn, 959 F.Supp. 689, 697 (E.D. Pa. 1996), report and recommendation adopted by 960 F.Supp. 893 (1997).[9] To allege a violation of 42 U.S.C. §12132, the plaintiff need not claim he was denied access to a program or services, but need only aver that the public entity’s facilities were not “readily accessible to and usable by individuals with disabilities.” See Saunders, supra, at 697; 28 Code Fed. Regs. §35.150(a).
Claims similar to those brought by the plaintiff have been found viable. See, e.g., Carty v. Farrelly, 957 F.Supp. 727, 741 (D. V.I. 1997) (housing of inmate who used cane, but had no mental illness, with mentally ill inmates posed “unnecessary and unwarranted risk of personal injury” and violated ADA); Saunders, supra, at 697 (plaintiff stated ADA claim when he suffered difficulty in walking due to having been deprived of his orthopedic shoes and in using bathroom facilities which were not designed to reasonably accommodate his disability). Disabled inmates have “no right to more services than the able-bodied inmates, but they have a right, if the Act [ADA] is given its natural meaning, not to be treated even worse than *22 those more fortunate inmates.” Crawford, supra, at 486.
The defendants urge this Court to dismiss plaintiffs ADA claims because, as they contend, the plaintiff is not disabled within the meaning of the ADA because his physical condition does not “substantially limit a major life activity.” Plaintiff has, however, sufficiently alleged his disability.
The ADA defines disability as “a physical or mental impairment that substantially limits one or more of the major life activities of an individual.” 42 U.S.C. §12102(2). A physiological disorder or a condition affecting the musculoskeletal system is listed in the regulations as an example of a physical impairment. 28 Code Fed. Regs. §35.104. Walking is listed as an example of a major life activity. Id. Conditions similar to the plaintiffs have constituted disabilities under the ADA. See Carty, supra, at 741 (inmate walked with cane); Saunders, supra, at 692 (degenerative spinal disk disorder). In so far as the plaintiff avers in his complaint that he suffers from sciatica, arthritis, ankle and back pain, which severely impact his ability to ascend and descend stairs, he has sufficiently alleged a disability under the ADA.
ORDER
It is hereby ORDERED that the defendants’ motion to dismiss is ALLOWED as to plaintiffs claims under 42 U.S.C. §§1985 and 1986, G.L.c. 22, §13A and 103 DOC §108.
It is hereby ORDERED that the defendants’ motion to dismiss is DENIED as to plaintiffs claims under G.L.c. 12, §§11H-I and 28 U.S.C. §§12101, et seq.
The motions for summary judgment of plaintiff, and of defendants, are DENIED.

 The defendants caption their motion as a motion to dismiss, or alternatively, as a motion for summary judgment. Except to the extent that the Court orders various claims dismissed for failure to state a cause of action, sufficient facts are admitted by defendants to create a dispute of material fact as to those other claims, so that the motions for summary judgment of both plaintiff, and of defendants, are DENIED.

 On February 10, 1998, this medical order, which is not disputed by defendants, was renewed for an indefinite period of time.

 Although not contained within the plaintiffs complaint, the defendants state in their motion that the plaintiff remained in a second-floor cell until July 16, 1998, the date on which plaintiff filed his complaint.

 Without a viable claim of conspiracy under 42 U.S.C. §1985(3), plaintiff cannot maintain a cause of action under 42 U.S.C. §1986. See, e.g., Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985).

 In Cleburne, in expressing reluctance to extend the breadth of suspect classifications, the Supreme Court stated, "... if the large and amorphous class of the mentally retarded were deemed quasi-suspect for the reasons given by the Court of Appeals, it would be very difficult to find a principled way to distinguish a variety of other groups who have perhaps immutable disabilities setting them off from others, who cannot themselves mandate the desired legislative response, and who can claim some degree of prejudice from at least part of the public at large. One need mention in this respect only the aging, the disabled, the mentally ill, and the infirm. We are reluctant to set out on that course, and we decline to do so.” Cleburne, supra, at 445-46.

 A threat involves the intentional exertion of pressure to make another fearful of injury or harm. See Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994). Intimidation involves putting in fear for the purpose of compelling or deterring conduct. Id, Coercion is the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done. Id.

 Public entity is defined as “any State or local government,” 42 U.S.C. §12131(1)(A), and as “any department, agency, special purpose district, or other instrumentality of a State or States or local government,” 42 U.S.C. §12131(1)(B).

 As stated in Crawford, supra, however, even if plaintiff establishes these factors, “this does not mean that plaintiff will prevail [as] the defendant may by able to show that there was no reasonable accommodation that would have enabled the plaintiff to participate, ... or may be able to show that any necessary accommodation would impose an undue burden on the prison system.” Id. at 487.