Lutgardo **ACEVEDO LOPEZ,**
et al., Plaintiffs,

v.

**POLICE DEPARTMENT OF THE COMMONWEALTH OF PUERTO RICO, et al., Defendants.**

No. Civ. 99–1322(JP).

United States District Court,
D. Puerto Rico.

Dec. 6, 1999.

Antonio Bauzá Torres, Hato Rey, P.R., for plaintiff.

Grisselle González Negrón, Department of Justice of P.R., Federal Litigation Division, San Juan, P.R., for defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (**docket No. 20**). Plaintiffs Lutgardo Acevedo López ("Acevedo") and his wife, Migdalia Fuentes Cabán, individually and on behalf of the conjugal partnership, did not file a timely opposition to Defendants' motion.[1] This

---

1. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, due on November 22, 1999, was filed on December 2, 1999. The Court had already closely analyzed the case and drafted the Opinion prior to receiving the Opposition. Plaintiffs had previously requested an extension of time to file their brief, which itself was filed two days after the

case arises out of Plaintiffs claims against Defendants the Police Department of Puerto Rico, Col. Héctor Quiles, in his personal and official capacities, and Pedro Toledo, in his personal capacity and in his official capacity as Superintendent of the Police Department for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–1012771. In addition, Plaintiffs bring pendent state law claims for intentional and/or negligent infliction of physical and/or emotional distress under Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31, § 5141.

## II. UNCONTESTED FACTS

Plaintiff has failed to contest the facts proffered by Defendant, and therefore, pursuant to Local Rule 311.12, the following facts are deemed admitted. (Def.'s Statement of Uncontested Facts). In addition, the Court takes notice of the facts to which the parties agreed in the Initial Scheduling Conference, held on July 1, 1999, and further takes notice of the geographical locations of the relevant cities and towns discussed herein. (Initial Scheduling Conf. Order, docket No. 19).

Plaintiff Acevedo worked for the Police Department of Puerto Rico as a police agent from April 22, 1993 to June 12, 1998. On August 12, 1993, a member of the House of Representatives of Puerto Rico for the Aguadilla–Moca area, Hon. Rafael Caro Tirado, wrote a letter to Col. Juan Sánchez requesting that Acevedo be assigned to Aguadilla upon completion of his training in the Police Academy. Aguadilla is a municipality in the northwestern corner of Puerto Rico. When Acevedo completed his training, he was assigned to Isabela, a municipality just east of Aguadilla. During the past two years, Acevedo has resided in Moca, Puerto Rico. The municipality of Moca is adjacent to both Aguadilla and Isabela, located to the southeast of the former and to the southwest of the latter. Prior to that, and at the time Acevedo began his employment with the Police Department, he resided in Aguadilla.

On October 14, 1994, Acevedo suffered a work-related back injury while making an arrest. Because of this injury, Acevedo reported to the State Insurance Fund on October 18, 1994. On November 3, 1994, the State Insurance Fund authorized Acevedo to return to work under continuing treatment. On November 4, 1994, Acevedo, upon his request, was transferred from Isabela to the Ramey Precinct, in Aguadilla. Acevedo requested this transfer to be closer to his home and with no medical recommendation. On April 28, 1995, the State Insurance Fund found that Acevedo was in good condition to return to work without disabilities.

Acevedo had a relapse in 1997 and returned to the State Insurance Fund on November 13, 1997. The State Insurance Fund placed Acevedo on rest. Acevedo was out of work from November 13, 1997 through June 10, 1998. On June 10, 1998, upon examination by a State Insurance Fund doctor, plaintiff was found to be in good condition to return to work without disabilities, and no medical recommendations for a reasonable accommodation were requested. On June 11, 1998, the Medical Division of the Puerto Rico Police Department issued a medical certificate after examining Acevedo; the examination did not reveal any need for a reasonable accommodation.

On June 12, 1998, Acevedo was assigned to the Arecibo area, located to the east of Aguadilla. Moca is approximately one hour from Arecibo by car. On that same

brief was due. The Court denied Plaintiffs' request for an extension. Given the proximity of the pretrial conference, scheduled for December 7, 1999, the Court found that any extension of time would unduly encroach upon the Court's own timetable and disrupt its case management system. The Court's analysis, therefore, does not take into account Plaintiffs' Opposition. The parties must understand that when they choose not to adhere to the deadlines imposed by the Court, they do so at their own risk and detriment.

day, Acevedo submitted his resignation, which the Police Department accepted. On December 18, 1998, the State Insurance Fund issued a medical certificate indicating that Acevedo should avoid "long trips" due to his back condition. On March 15, 1999, the State Insurance Fund issued a medical discharge from treatment with disability. Acevedo is currently working as an auditor with the accounting firm Vilá del Corral and Co. in Río Piedras, Puerto Rico. Río Piedras is part of San Juan, Puerto Rico, and is approximately two hours from Moca by car.

## III. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1992); *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

### B. Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") prohibits employment discrimination against qualified individuals with disabilities who can perform the essential functions of a job with or without reasonable accommodation. *See* 42 U.S.C. § 12112(a). The mandate of the ADA extends to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. *See id.*

■ To establish a claim of disability discrimination under the ADA, a plaintiff must prove (1) that he or she is disabled within the meaning of the ADA; (2) that with or without reasonable accommodation, he or she could perform the essential functions of the job; and (3) that the employer took an adverse employment action with respect to the plaintiff in whole or in part because of the disability. *See Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir.1996). A plaintiff may also indirectly prove his or her case "by using the prima facie case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 n. 2 (1st Cir. 1996) (citations omitted); *see also EEOC v. Amego, Inc.*, 110 F.3d 135, 145 n. 7 (1st Cir.1997) (recognizing that "the ADA is interpreted in a manner similar to Title VII").

Under the *McDonnell Douglas* framework, a plaintiff must first prove by a preponderance of the evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result. *See Jacques*, 96 F.3d at 511 (citing *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162–63); *see also Dichner v. Liberty Travel*, 141 F.3d 24, 30 (1st Cir.

1998). Such a showing gives rise to an inference that the employer discriminated due to the plaintiff's disability and places upon the employer the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *See Dichner,* 141 F.3d at 30; *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 153 (1st Cir.1990). This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains with the plaintiff at all times. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Once the employer articulates such a reason, the inference raised by the prima facie case dissolves, *see Mesnick v. General Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991), and the plaintiff is required to show, unaided by the original inference of discrimination, that the employer's proffered reason is a pretext for discrimination. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973).

### C. Plaintiff's Prima Facie Case

Defendants move for the summary dismissal of the Complaint on the grounds that Plaintiffs have failed to demonstrate that Acevedo is disabled within the meaning of the ADA. Defendants contend that it is uncontested that Acevedo's back condition does not substantially limit a major life activity and, consequently, Plaintiffs have failed to set forth a prima facie case of discrimination under the ADA.

The ADA states, in relevant part, that an individual is disabled when he or she (A) has a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court set forth a three part test for analyzing whether a plaintiff suffers from a disability within the meaning of subsection 12102(2)(A) of the ADA. The first step is to determine whether the plaintiff has a physical or mental impairment. *See id.* at 2202. Second, the life activity upon which the plaintiff relies is identified, and it is determined whether it constitutes a major life activity under the ADA. *See id.* Finally, the Court inquires whether the plaintiff's impairment substantially limits the major life activity previously identified. *See id.*

### 1. Impairment

■ EEOC regulations implementing the ADA define an impairment to include any "physiological disorder, or condition" that affects the neurological, musculoskeletal, and cardiovascular systems. 29 C.F.R. § 1630.2(h)(1); *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 642 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). Acevedo alleges in the Complaint that he injured his lower back while making an arrest. As a result he suffers from spondylolysis and/or spondilolisthesis, a condition that causes pain, inflammation, muscle spasms, and stiffness. (Compl.¶ 13). Because this is a physiological condition affecting Acevedo's musculoskeletal system, he has an impairment. *See Saunders v. Horn,* 959 F.Supp. 689, 697 (E.D.Pa.1996) (degenerative disk disorder a physiological disorder or condition affecting musculoskeletal system).

### 2. Major Life Activities

The regulations promulgated by the EEOC define major life activities to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is illustrative, not exhaustive. *See Bragdon,* 118 S.Ct. at 2205. The U.S. Supreme Court has noted that "[t]he plain meaning of the word 'major' denotes comparative importance and suggest[s] that the touchstone for determining an activity's inclu-

sion under the statutory rubric is its significance." *Id.* In determining whether an activity is a major life activity, a court looks to "whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Colwell*, 158 F.3d at 642.

■ The only major life activity in which Acevedo alleges to be substantially limited is driving. The Complaint indicates that Acevedo cannot drive long distances in a car. (Compl.¶ 13). Acevedo does not allege that his lower back condition in any way limits him in the major life activity of working, or hinders his ability to perform his functions as a police agent. Rather, Acevedo's only contention is that his condition prevents him from driving a long distance to work from his home in Moca. (*Id.*, ¶ 15). The Second Circuit has concluded that driving does not constitute a major life activity. *See Colwell*, 158 F.3d at 643; *see also Piascyk v. City of New Haven*, 64 F.Supp.2d 19, 26 (D.Conn.1999). This Court agrees that driving is not a sufficiently significant or essential function to qualify as a major life activity under the ADA. The significance of driving is simply not on par with those basic, essential human functions that are within the contemplation of the ADA, such as caring for oneself, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 28 C.F.R. § 41.31(b)(2); *see also Bragdon*, 118 S.Ct. at 2205 (holding that reproduction, "central to the life process itself," is a major life activity).

Acevedo does not qualify as disabled under subsection 12102(2)(A) of the ADA. Nor has Plaintiff come forward with evidence to demonstrate a genuine issue of material fact as to whether Acevedo is disabled under the definitions in subsections 12102(2)(B) (record of impairment) or 12102(2)(C) (being regarded as disabled). There is simply no evidence to suggest his eligibility under either subsection. Because Plaintiffs have failed to create an issue of fact as to whether Acevedo is disabled within the meaning of the ADA, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiffs' ADA claim.

As there is no independent basis for federal jurisdiction over Plaintiffs' supplemental state law claims, the Court declines to exercise pendent jurisdiction over Plaintiffs' claims under Puerto Rico law. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court hereby **DISMISSES** Plaintiffs' pendent claims under Puerto Rico Law **WITHOUT PREJUDICE.**

### IV. Conclusion

In light of the foregoing, the Court hereby **DISMISSES** the Complaint against Defendants the Police Department of Puerto Rico, Col. Héctor Quiles, in his personal and official capacities, and Pedro Toledo, in his personal capacity and in his official capacity as Superintendent of the Police Department.

**IT IS SO ORDERED.**