Edgardo **SOLER, et al., Plaintiffs,**

v.

**TYCO ELECTRONICS, INC., Defendant.**

**No. CIV. 02–1185(PG).**

United States District Court, D. Puerto Rico.

June 16, 2003.

Anibal Escanellas–Rivera, San Juan, PR, for Edgardo Soler, Madeline Myrna Rodriguez–Giron, Conjugal Partnership Soler–Rodriguez, plaintiffs.

Pedro J. Torres–Diaz, McConnell Valdes, San Juan, PR, for Tyco Electronics, Companies A, B, C, defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is Defendant Tyco Electronics, Inc.'s Motion for Summary Judgment, (Def.'s Mot. Summ. J., Docket No. 23), and Plaintiffs' Opposition to the Motion for Summary Judgment, (Pls.'s Opp'n Mot. Summ. J., Docket No. 29). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Plaintiffs, Edgardo Soler, Madeline Rodríguez, and their Conjugal Partnership, filed this suit against Defendant Tyco Electronics, Inc. on February 7, 2002. (Compl., Docket No. 1). Plaintiffs brought forth causes of actions for discrimination, harassment, and unjustified dismissal under the Americans with Disabilities Act, the Age Discrimination in Employment Act, Puerto Rico Law 44, Puerto Rico Law 100, Puerto Rico Law 80, and Article 1802 of the Puerto Rico Civil Code. (Compl., at 9–10).

Plaintiff Edgardo Soler developed cardiovascular problems that lead to a heart attack and by-pass surgery in June, 1998. The heart surgery was successful and after a month-long absence Mr Soler returned to his position as sales representative in Tyco Electronics. After the surgery, however, Mr. Soler developed physical limitations that, he claims, have substantially limited his ability to perform basic life activities. In the three years after returning to work, Mr. Soler was allegedly the victim of a harassment and discrimination campaign by the Defendant. This campaign included age and disability-based derogatory comments and other actions of harassment, and culminated in Mr. Soler's dismissal in March, 2001. Plaintiffs claim that the decision to fire Plaintiff Soler was based on his age—he was fifty-one years old—and his disability.

### SUMMARY JUDGMENT STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is one that is dispositive and must be resolved at trial because a reasonable jury could resolve in favor of the non-moving party. *Arvelo v. American International Insurance Co.*, 875 F.Supp. 95, 99 (D.P.R.1995). A fact is material if under applicable substantive law it may affect the result of the case. *See Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990).

The party moving for summary judgment "always bears the initial responsibili-

ty of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Once a moving party has made a showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to demonstrate that a trial worthy issue remains. *See Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997); *Borschow Hosp. & Med. Supplies Inc., v. Cesar Castillo, Inc.,* 96 F.3d 10,14 (1st Cir.1996). The non-moving party must set forth specific facts in proper evidentiary form substantiating that a genuine factual issue exists for trial. Nevertheless, in determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.,* 880 F.2d 621, 624 (1st Cir.1989).

## DISCUSSION

### ADA Discrimination Claims

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2002), was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101. In addressing discrimination in the employment, the statute provides as follows:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment.

42 U.S.C. § 12112(a).

 To establish a claim of discrimination under the ADA a plaintiff must establish: "(1) that he or she suffers from a 'disability' within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability." *Feliciano v. Rhode Island,* 160 F.3d 780, 784 (1st Cir.1998). Plaintiffs may also pursue their ADA discrimination claim indirectly through the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Katz v. City Metal Co.,* 87 F.3d 26, 30 n. 2 (1st Cir.1996). Under this framework, as adapted to ADA claims, a plaintiff must first prove, by a preponderance of the evidence, that he or she:

"(i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result."

*Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996). The disability requirement can be met in one of three ways: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

### Existence of Physical or Mental Impairment

■ To prove disability under the first prong, courts must first determine whether the plaintiff has a physical or mental impairment, and then determine whether it substantially limits his or her ability to engage in major life activities. *See Santiago Clemente v. Executive Airlines,* 7 F.Supp.2d 114, 117 (D.P.R.1998); *see also Rodríguez v. Loctite P.R. Inc.,* 967 F.Supp. 653, 659 (D.P.R.1997) ("An illness cannot in and of itself be considered an impairment. Only its symptoms and/or ramifications actually limit the inflicted person's ability to perform major life activities."). Because both parties agree that Mr. Soler's heart condition qualifies as an physical impairment, (Def.'s Mot. Sum. J., at 9), the Court concentrates on whether major life activities are being substantially limited.

■ "Major life activities" are described as "activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Basic abilities such as walking, seeing, and hearing fall under this category. *Id.* at 196, 122 S.Ct. 681. Manual tasks are included only if they constitute "activities that are of central importance to most people's daily lives." *Id.* at 197, 122 S.Ct. 681. A medical diagnosis is insufficient to prove that an impairment is substantially limiting a major life activity; plaintiffs must present "evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial." *Id.* at 197–98, 122 S.Ct. 681. " '[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* at 196–97, 122 S.Ct. 681.

The impairment must be long-term or potentially long-term to be substantially limiting. *See Katz.* 87 F.3d at 31. Determining if a person has a disability under the ADA is an individualized inquiry. *See Sutton,* 527 U.S. at 483, 119 S.Ct. 2139; *Katz,* 87 F.3d at 32.

■ Plaintiffs claim that Mr. Soler has been "practically unable to engage in physical activities, among these walking," because his legs "get swollen up" and immobilized by cramps. (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶ 39). He is thus forced to stop and raise his legs to ease blood circulation. (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶ 39). Mr. Soler allegedly has not been able to engage in sexual relations with his wife, or to engage in any type of exercise, such as running. (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶¶ 40–41). He cannot lift heavy objects, and received specific instructions not to lift objects heavier than forty pounds. (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶ 43). Nor can he drive long distances: whenever he drives, he must make "several stops in order to stretch out, and thus try to avoid [his] leg cramps." (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶ 45). Finally, Mr. Soler claims that he cannot perform activities such as washing his car, bathing his dog, taking care of his lawn, helping with house chores, or playing with his children. (Pls.' Opp'n Mot. Sum. J., Ex. 1, ¶ 42).

■ The inability to perform tasks such as washing cars, taking care of the back yard, playing with children, and driving long distances does not amount to such severe restrictions to qualify as major life activities. *See Williams,* 122 S.Ct. at 694. Even if they did, Mr. Soler's claims are defeated by his own statements to the Social Security Administration in August 11, 2001—four months after his dismissal—that he could prepare his meals, perform general house chores, clean the yard, tend to his pets, go to the movies, and visit

family and friends.[1] (Mr. Soler's Dep., at 87–91, *in* Def.'s Mot. Summ. J., Ex. 32). Mr. Soler even traveled outside of Puerto Rico at least twice after his surgery. (Mr. Soler's Dep., at 77).

As to driving short distances, some courts have held that driving is not a major life activity. *See, e.g., Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2d Cir.1998.); *Acevedo–López v. Police Dep't of P.R.,* 81 F.Supp.2d 293, 296–97 (D.P.R.1999), *aff'd on other grounds* 247 F.3d 26 (1st Cir.2001). Again, Plaintiffs' contradictions frees the Court from deciding such a question. Mr. Soler claims in his Motion for Summary Judgment that he cannot drive, yet in August, 2001, he had declared that he moved around driving his own car, (Mr. Soler's Dep., at 89–90). This testimony does not support a finding of a substantial limitation in a major life activity.

The courts are also divided as to whether engaging in sexual relations qualifies as a major life activity. *Compare McAlindin v. County of San Diego,* 192 F.3d 1226, 1234 (9th Cir.1999) ("We conclude that engaging in sexual relations, just like procreation, is a major life activity.") *and Contreras v. Suncast Corp.,* 237 F.3d 756, 764 (7th Cir.2001) ("The Supreme Court's

ruling in that matter does not stand for the proposition that a change in the frequency with which an individual can engage in intercourse, as a result of a bad back, constitutes an impairment which substantially limits a major life activity."). The Court agrees with the Seventh Circuit's interpretation. In holding that reproduction was a major life activity, the Supreme Court in *Bragdon v. Abbott* stated that "[r]eproduction and the sexual dynamics surrounding it are central to the life process itself." 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). This statement does not mean, however, that *Bragdon* declared sexual activity as a major life activity under the ADA. The Court's primary concern was with reproduction, not with decreases in sexual activity. Here, Mr. Soler declared that he has been sexually active after the surgery, although not at the same rate. (Mr. Soler's Dep., at 238–39). This decrease in the frequency of sexual activity, by itself, is not sufficient to establish a substantial limitation. Mr. Soler also declared that he does not intend to have any more children, (Mr. Soler's Dep., at 239), thus precluding consideration of the Supreme Court's concern with reproduction.

---

1. Faced with these glaring and potentially fatal contradictions, Mr. Soler claims that his condition worsened significantly after he made these statements to the Social Security Administration. (Pls.'s Opp'n Mot. Summ. J., Ex. 1, ¶ 47). This explanation is unavailing. The Court notes that Mr. Soler. made the statements to the Social Security Administration in August, 2001—merely four months after his dismissal. While Mr. Soler's and Mrs. Madeline Rodríguez's unsworn statements accompanying his Opposition to the Motion for Summary Judgment might attest to how Mr. Soler felt in May, 2003, *see, e.g.,* Pls.'s Opp'n Mot. Summ. J., Ex. 1, ¶ 45 ("I am, as of today, substantially limited and restricted . . . ."), his statements to the Social Security Administration, and repeated in his Deposi-

tion, attest to Mr. Soler's condition in 2001— the year when he was dismissed. Since the Court must determine whether Mr. Soler was disabled under the ADA during the time he was employed with Defendant Tyco Electronics, his statements as to his condition and limitations as of 2001 are paramount. The Court further notes that because the "parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment," *see, e.g., RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 402 (8th Cir.1995), the myriad contradictions outlined in this Opinion between Mr. Soler's statements in his Deposition and those in his Motion for Summary Judgment do not create genuine issues of fact.

Lifting has been recognized by the First Circuit as a major life activity, *see Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 21 (1st Cir.2002), although the court also suggested that cases from other circuits[2] holding that restrictions on heavy lifting were not indicative of a disability "seem[ed] correctly decided," *id.* at 23. The Court finds that Mr. Soler's restriction on lifting objects heavier than forty pounds does not indicate a disability under the ADA. Neither is there support for Mr. Soler's claim that he has substantial limitations lifting even light objects. A person who can clean his dishes, clean the yard, bathe his dog, do the groceries, take out the garbage, and prepare his own meals, (Mr. Soler's Dep., at 87–93), does not have the kind of lifting limitations that concerned the First Circuit in *Gillen.* In that case the impairment—the loss of a hand—posed "a type of restriction on lifting not shared by a significant portion of the populace." *Id.* at 23. Mr. Soler's own statements show that his lifting limitations are limited, if at all, to heavy objects and do not compare to those at issue in *Gillen.* His impairment, thus, has not substantially limited the major life activity of lifting.

▇▇▇ Finally, the Court turns to Mr. Soler's alleged substantial limitations in walking. Walking undoubtedly qualifies as a major life activity under the ADA. *See Williams,* 534 U.S. at 196–97, 122 S.Ct. 681. Courts have held, however, that impairments limiting walking to no more than one or two miles or creating difficulties walking or climbing stairs do not qualify as substantial limitations under the ADA. *See, e.g., Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999); *Kelly v. Drexel University,* 94 F.3d 102, 106–108 (3d Cir.1996). Mr. Soler's statements

again defeat his claims of substantial limitation. He declared that he could walk two or three times a day, (Mr. Soler's Dep., at 90–91), climb stairs, and even swim, (Mr. Soler's Dep., at 93). This kind of mobility and physical activity betray a claim of a substantial limitation in walking.

When taken together and examined as a whole, the activities that Mr. Soler has been able to perform since his surgery are not consistent with those of a person substantially limited in his major life activities. His ability to perform many of these activities has suffered, and he certainly feels fatigued, at times, when performing them, but being substantially limited from engaging in major life activities entails more than moderate limitations. The evidence submitted by Mr. Soler shows that he is physically impaired, but it does not support a finding that the impairment has resulted in anything more than moderate limitations.

### Record of a Physical or Mental Impairment

▇▇▇ To prove disability under the second prong, a plaintiff must prove she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity. *Santiago Clemente v. Executive Airlines, Inc.,* 213 F.3d 25, 33 (1st Cir.2000). In these cases, "[w]hile her employer's awareness might be enough to establish a record of her *condition,* it does not, by any means, establish a record of *disability*." *Santiago Clemente,* 7 F.Supp.2d at 118.

▇▇▇ Plaintiffs have presented no evidence showing that Mr. Soler had been classified or misclassified with an impairment substantially limiting a major life

---

**2.** *See, e.g., Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1207 (8th Cir.1997); *Ray v. Glid-* *den Co.,* 85 F.3d 227, 229 (5th Cir.1996).

activity. The evidence shows that Defendant Tyco was aware of Mr. Soler's heart condition, but this awareness, by itself, is insufficient to establish a record of his disability.

### Being Regarded as Having a Physical or Mental Impairment

A person is being regarded as having an impairment, *inter alia,* if he or she has "a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." *Santiago Clemente,* 213 F.3d at 33. In this analysis courts should focus "on the reaction and perceptions of the persons interacting or working with him." *Kelly,* 94 F.3d at 108–09. The mere fact of awareness of an employee's impairment "is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." *Id.* at 109.

Plaintiffs have presented no evidence showing that Defendant Tyco Electronics regarded him as having a physical impairment that substantially limited a major life activity. The remarks allegedly made by Mr. Soler's supervisor, (Pls.' Opp'n Mot. Summ. J., Ex. 1, ¶¶ 50–52), show awareness of Mr. Soler's condition. But these remarks, while untimely and perhaps insensitive, do not show that Defendant regarded him as substantially limited in performing major life activities. Mr. Soler admitted that many of the comments and questions were directed at asking about his general condition and health.[3] Moreover, there is no evidence that Defendant limited or reassigned Mr. Soler's duties and responsibilities after his return

to work. Mr. Soler's admitted that no one at Tyco prevented or dissuaded him from returning to work, (Mr. Soler's Dep., at 67–68), and his evaluations do not mention any perceived problems arising out of his heart condition, (Mr. Soler's Dep., at 164). The evidence shows that Defendant was aware of Mr. Soler's heart condition, but not that it regarded him as disabled under the ADA.

Because Plaintiffs have failed to show that Mr. Soler suffered from a disability within the meaning of the ADA, Defendant's request for summary judgment on the claims of disability-based discrimination under the ADA is **GRANTED** and the claims **DISMISSED**.

### ADEA Discrimination Claims

The ADEA makes it unlawful for an employer to take adverse employment action against an employee because of his age. 29 U.S.C. § 623(a)(1); *Álvarez–Fonseca v. Pepsi Cola of Puerto Rico,* 152 F.3d 17, 24 (1st Cir.1998). At all times a plaintiff has the burden of proof as to the age-based discrimination claim. *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998). To survive a motion for summary judgment, the plaintiff must adduce direct evidence of discrimination or present circumstantial or indirect evidence to make out a prima facie case of discrimination under the burden-shifting analysis of *McDonnell Douglas.*

To establish a prima facie case of age discrimination, a plaintiff must prove that (i) she was over the age of forty, (ii) her work was sufficient to meet her employer's legitimate expectations, (iii) her employer took adverse employment action against her, and (iv) the employer

---

3. Even if these remarks are interpreted to reflect a concern with Mr. Soler's age and health, such concerns do not mean that Defendant regarded him as disabled. *See Taylor*

*v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir.2000); *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir.1999)

sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills.[4] *Baralt v. Nationwide Mutual Ins. Co,* 251 F.3d 10, 15–16, n. 8 (1st Cir.2001); *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). Defendant may still avoid liability by "showing it had legitimate grounds for its action that would have led to the same result." *Melendez–Arroyo v. Cutler–Hammer,* 273 F.3d 30, 33 (1st Cir.2001).

Once a plaintiff establishes a prima facie, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason that justifies the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The burden that shifts to the defendant is only one of production, not of persuasion. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Alvarez–Fonseca,* 152 F.3d at 26. At this stage the defendant must merely articulate, not prove, a legitimate, non-discriminatory reason. *See Frunco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Thus, courts at the summary judgment stage cannot assess the credibility of the articulated reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant cannot offer a legitimate, non-discriminatory reason "to justify the adverse employment decision, then the inference of discrimination created by the prima facie case persists, and the employer's attempt to secure summary judgment should be rebuffed." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 824 (1st Cir.1991).

If the defendant fulfills his or her burden of production, plaintiff retains the ultimate burden of establishing, by the preponderance of the evidence, that the reasons offered by the defendant for the adverse employment action are a mere pretext and that the true reason is discriminatory. *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 56 (1st Cir.1999). The First Circuit explained that although it has referred to this rule as the "pretext-plus" standard, the standard "does not necessarily require the introduction of additional evidence beyond that required to show 'pretext,' i.e., evidence showing that the employer's articulated reason is false." *Id.* at 57. "The same evidence used to show pretext can support a finding of discriminatory animus if it enables a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 34 (1st Cir.2001). Thus, this burden can be carried out "without direct proof of discrimination." *Mesnick,* 950 F.2d at 824.

Here, the parties do not dispute that Mr. Soler was over forty years old or that he was terminated. Neither does there seem to be a dispute regarding his performance: although Mr. Soler had been placed in probation in January, 2000, (Def.'s Mot. Sum. J., Ex. 21), Defendant admits that he was removed from probation on October, 2000, (Def.'s Mot. Summ. J., Ex. 30). Subsequent evaluations were positive. (Mr. Soler's Dep., at 231–32).

Plaintiffs, however, have failed to present evidence showing that Defendant had a "continued need for the same services and skills." While Plaintiffs do not

---

4. The First Circuit has clarified that the fourth prong does not require replacement by a younger person. *See Freeman v. Package* *Mach. Co.,* 865 F.2d 1331, 1335 n. 2 (1st Cir.1988).

have to show that Mr. Soler was replaced by a younger person, *see Freeman*, 865 F.2d at 1335 n. 2, they still have to show that Defendant Tyco had a continued need for the same services and skills that Mr. Soler provided. Here, the undisputed evidence shows that Mr. Soler was not replaced by another person, whether younger or older. (Mr. Soler's Dep., at 230–31). Mr. Soler was terminated on March 20, 2001, after Intel, one of his clients since 1998, closed operations in Puerto Rico. His remaining accounts were distributed among the two other sales representatives: Mrs. Sara Berríos and Mr. Richard Castro. (Pls.'s Opp'n Mot. Summ. J., Ex. 1, ¶ 97). These employees did not "replace" Mr. Soler, however, because a discharged employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work," *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 846 (1st Cir.1993). According to Mr. Soler's own statements, Mrs. Berríos and Mr. Castro were working for Defendant at the time of his resignation, (Pls.' Opp'n Mot. Summ. J., Ex. 1, ¶ 6), "occupied identical positions with identical functions, duties and terms and conditions of employment" to those of Mr. Soler, (Pls.' Opp'n Mot. Summ. J., Ex. 1, ¶ 14), and were given Mr. Soler's remaining accounts in addition to their other, previous duties, (Pls.'s Opp'n Mot. Summ. J., Ex. 1; ¶ 97). Thus, Mr. Soler was not replaced by Mrs. Berríos, Mr. Castro, or any other person.

Moreover, Mr. Soler's own statements show that Defendant did not have a continued need for his position once Intel closed its operations in Puerto Rico. The Intel account represented eighty percent of Mr. Soler's work, (Mr. Soler's Dep., at 136), and consumed thirty-two of his forty hours of work per week, (Mr. Soler's Dep., at

255). Mr. Soler had other clients, (Pls.'s Opp'n Mot. Sum. J., Ex. 1, ¶ 81), but he admits that these clients accounted for only twenty percent of his work and eight hours of his working week, (Pls.' Dep. at 255). Intel's exit in effect eliminated the need for Mr. Soler's position; that is, there was no need to maintain a sales representative position to handle just eight hours of work a week. Because they have not shown that Defendant had a continued need for the same services and skills, Plaintiffs have failed to establish their prima facie for age discrimination under the ADEA. Dismissal at this stage is appropriate.

■■■ Even if Plaintiffs had established their prima facie case, there is not sufficient evidence in the record to show pretext or discriminatory animus. Plaintiffs allege that Defendant strayed from their usual policy of "reshuffling" or reassigning clients among its sales representatives whenever a client "was lost." (Pls.' Opp'n Mot. Summ. J., at 25–26). Mr. Soler admitted, however, that these "reshufflings" were not automatic. (Mr. Soler's Dep., at 229). Moreover, even if "reshuffling," as described by Mr. Soler, was the Defendant's policy, a departure from company policies is not enough to show discriminatory animus. *See Rodríguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 22 (1st Cir.1999); *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir.1989). Plaintiffs also attempt to show pretext by arguing that Mr. Soler's was transferred to a different division to handle the Intel account only two weeks before his termination because Defendant knew that Intel's operations in Puerto Rico would be closed. (Pls.' Opp'n Mot. Summ. J., Ex. 1, ¶ ). Mr. Soler's own statements contradict him again. In both his deposition and his Motion for Summary Judgment, Mr. Soler stated that he had been assigned to the

Intel account before his heart attack. (Mr. Soler's Dep., at 134; Pls.' Opp'n Mot. Summ. J., Ex. 1, ¶ 30).

 Finally, the alleged derogatory statements regarding Mr. Soler's age do not show discriminatory animus behind the dismissal. " 'Stray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *González v. El Día, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). Here, Plaintiffs allege that Mr. Stephen Zablotny made several derogatory comments regarding his age: "How are you feeling, do you think you can still work due to your heart condition and age?"; "Do you feel you don't need to go and handle any other job, or go to retirement, or something like that?"; "If a window comes up . . . would you consider to take retirement due to your age and heart condition?"; and "How old are you, you old fart?" (Pls.'s Opp'n Mot. Summ. J., Ex. 1, ¶¶ 50–52).

First, the Court notes that none of the remarks were made by the Tyco supervisors involved in the decision to terminate Mr. Soler. In March, 2001, when Mr. Soler was terminated, Mr. Diavitin—and not Mr. Zablotny—was Ms. Soler's supervisor. (Mr. Soler's Dep., at 218). And according to Mr. Soler's own statements, Mr. Kevin Rock—not Mr. Zablotny—was responsible for the decision to dismiss him. (Mr. Soler's Dep., at 223). There is no evidence showing or even suggesting that Mr. Zablotny was involved in the decision of dismissing Mr. Soler. Second, there is no evidence that these remarks were made during, or even in close temporal proximity to, the decision to terminate Mr. Soler. (Mr. Soler's Dep., at 125–28). Mr. Zablotney allegedly made many of these remarks at some point between 1998 and 2000—as

far back as three years before Mr. Soler's termination. (Mr. Soler's Dep., at 125–28). These remarks, moreover, were sporadic, occurring only when Mr. Zablotny traveled to Puerto Rico to meet with the sales representatives. (Mr. Soler's Dep., at 125). According to Mr. Soler, Mr. Zablotny did not visit Puerto Rico more than four times a year. (Mr. Soler's Dep., at 242–43). Without evidence establishing close temporal proximity, and considering the sporadic nature of the statements, Mr. Zablotny's remarks "afford an inadequate foundation for the requisite discriminatory intent," *González,* 304 F.3d at 69–70; *see also Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 36 (1st Cir.2001) ("But though such 'stray remarks' may be *material* to the pretext inquiry, their *probativeness is circumscribed* if the were made in a situation temporally remote from the date of the employment decision."); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000) ("It is true that the weight of such remarks is circumscribed if they were made in a situation temporally remote from the date of the employment decision."). Finally, to the extent that the remarks referred to, offered, or discussed Mr. Soler's potential retirement, they do not show discriminatory animus. *See González,* 304 F.3d at 71 ("[T]he mere tender of a retirement proposal does not evince the requisite discriminatory animus.").

Defendant's request for summary judgment on the ADEA discriminatory dismissal claim is thus **GRANTED**.

*Harassment Claims*

 "To prove a hostile-work-environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Rivera–*

112

Rodríguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 23 (1st Cir.2001), *abrogated on other grounds by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir.2002). In examining such a claim, courts should look at "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." [5] *Id.*

■ Mr. Soler never complained to Tycos's human resources department about any offensive remarks or age-based harassment. (Mr. Soler's Dep., 102–104, 131). These remarks, which Mr. Soler admits were sporadic, might have been offensive and untimely, but they did not create a hostile or humiliating working environment. Even if he had complained, Plaintiffs have not submitted any evidence to support a finding that he was subjected to harassment so severe as to alter his working conditions. Summary judgment in favor of Defendant on the harassment claims is appropriate.

### Supplemental Jurisdiction Claims

Having dismissed all federal claims against Defendant, the Court declines to exercise supplemental jurisdiction over Plaintiffs' claims under Puerto Rico law. *See Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992) (quoting *Cullen v. Mattaliano*, 690 F.Supp. 93 (D.Mass.1988)) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is the subject of a successful summary judgment motion, the pendent state claims should be dismissed.").

### CONCLUSION

Defendant Tyco Electronics, Inc.'s Motion for Summary Judgment is **GRANTED**. All the claims against Defendant are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

---

5. This test is also used to examine disability-based harassment claims. *See Loctite P.R.*, 967 F.Supp. at 663. Because there is no evidence to support a finding of disability under the ADA, Plaintiffs disability-based harassment claims fails. *See Rivera–Rodríguez*, 265 F.3d at 23.